# United States Court of Appeals
## For the First Circuit

No. 20-1661

HÉCTOR EDGARDO SÁNCHEZ-VÁSQUEZ,

Petitioner,

v.

MERRICK B. GARLAND,[*]
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

William Keefe on brief for petitioner.
Jeffrey Bossert Clark, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Anthony C. Payne, Assistant Director, Office of Immigration Litigation, and Jeffrey R. Leist, Senior Litigation Counsel, on brief for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr as the respondent.

April 7, 2021

**SELYA**, **Circuit Judge**. The petitioner, Héctor Edgardo Sánchez-Vásquez, is a Salvadoran national. He seeks judicial review of a decision of the Board of Immigration Appeals (BIA), which upheld an adverse decision by an immigration judge (IJ) denying, inter alia, his application for withholding of removal. Relatedly, he seeks review of the BIA's rulings with respect to an evidentiary proffer made for the first time before that body. Concluding, as we do, that the BIA's rejection of the petition was supported by substantial evidence and that its rulings with respect to the evidentiary proffer (including its decision not to remand for further proceedings) were within the compass of its discretion, we deny the petition.

**I**

The petitioner entered the United States without inspection on September 3, 2008. More than a decade later, the Department of Homeland Security commenced removal proceedings against him, charging that he was subject to removal as an alien present in the United States without having been lawfully admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). The petitioner, a non-English speaker, was detained pending a bond hearing. He appeared pro se, and the IJ continued the proceedings. When the petitioner's case came up again, the IJ found him removable, but explained the various kinds of relief that might nonetheless be available.

- 3 -

The third time around, the petitioner appeared with pro bono counsel, and the IJ granted another continuance at the lawyer's request. When the petitioner next appeared, standby counsel asked for time to help the petitioner prepare his application for relief from removal. The court granted a further continuance.[1] The fifth hearing was marked by the IJ's review of the petitioner's application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). In support, the petitioner testified that, while in El Salvador, gang members (belonging to the El Salvador-based MS-13 gang) twice told him that if he refused to join their ranks, they would kill him. Specifically, the petitioner testified that "[t]hey told me that if I didn't participate with them, that they were going to kill me. They said what they always say, which is, if you're not with us, you're against us." The gang members did not mention the petitioner's religion during either encounter.

To be sure, the petitioner testified that the gang members referred to his distribution of anti-gang pamphlets. He stated that he had distributed these pamphlets as part of his affiliation with a Christian youth group. Even so, the petitioner in no way alleged to the IJ that the gang members associated his

---

[1] We note that at both the second and fourth hearings, the IJ told the petitioner that he was allowed to submit additional documents and described the procedure for furnishing such documents.

- 4 -

pamphlet distribution with his Christian youth group affiliation. It was after his second encounter with the gang members that the petitioner decided to flee to the United States.

Among other things, the IJ questioned the petitioner about the additional documents that he did obtain and asked the petitioner, "[i]s there anything else you want to tell me?" The petitioner replied in the negative.

A sixth hearing was held approximately ten days thereafter. Before rendering her bench decision, the IJ again inquired of the petitioner: "[i]s there anything else . . . you want to tell me that you haven't already told me about why you're afraid to go back to your home country?" The petitioner once more replied in the negative, and the IJ proceeded with her decision.

In that decision, the IJ rejected the petitioner's asylum claim as time-barred because the petitioner had not applied for asylum within the statutorily prescribed period. See 8 U.S.C. § 1158(a)(2)(B) (requiring — with exceptions not relevant here — that applications for asylum be filed within one year of an alien's entry into the United States). She also rejected the petitioner's CAT claim because the petitioner had not shown a sufficient nexus between the asserted harm and any government official. See Chhay v. Mukasey, 540 F.3d 1, 7 (1st Cir. 2008) (indicating that successful CAT claim must have nexus linking government official to torture inflicted or to be inflicted upon petitioner). The

petitioner does not challenge either of these rulings, and we therefore treat both claims as abandoned. See Zaruma-Guaman v. Wilkinson, 988 F.3d 1, 8 (1st Cir. 2021); Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). The IJ also denied the petitioner's claim for withholding of removal, explaining that the harm the petitioner allegedly suffered was not on account of either his religion or any other statutorily protected ground. See 8 U.S.C. § 1231(b)(3)(A).

The petitioner appealed this decision to the BIA. Represented by counsel, he proffered a sheaf of documents, asked the BIA to take administrative notice of facts that he claimed were evidenced by those documents, and sought an order remanding to the IJ for further consideration of both the extent to which Christians were persecuted in El Salvador and the causes of such persecution. As part of his argument, he noted that he had proceeded pro se before the IJ and — due to a language barrier and his custody status — was unable to submit the documents earlier. The BIA affirmed the IJ's decision, declined the invitation to take administrative notice of the proffered documents, eschewed any remand, and dismissed the appeal. See In re Sanchez-Vasquez, No. A201-582-862, at *1 (BIA Jun. 2, 2020). This timely petition for judicial review followed.

In this venue, the petitioner's asseverational array can be separated into three buckets. First, he contends that the agency's denial of withholding of removal cannot stand because he presented enough facts to establish persecution on account of his religious affiliation and activities. Second, he contends that the BIA erred in concluding that he had not raised certain arguments before the IJ and, therefore, erred in refusing to consider those arguments. Third, he contends that the BIA's mishandling of the "administrative notice" issue and/or its refusal to remand the case to the IJ for perscrutation of the proffered documents comprised an abuse of discretion. We discuss these asseverations sequentially, noting that when reviewing an order denying both a withholding-of-removal claim and a related refusal to remand, "[t]he statutory framework permits us to consider both [rulings] in a single proceeding." Morgan v. Holder, 634 F.3d 53, 56 (1st Cir. 2011) (citing 8 U.S.C. § 1252(b)(6)). We caution, however, that these rulings "remain legally distinct." Id.

## A

We begin by addressing the petitioner's contention that he established all the necessary elements of a withholding-of-removal claim. "Where, as here, the BIA embraces the IJ's decision but adds its own gloss, we review both decisions as a unit."

Miranda-Bojorquez v. Barr, 937 F.3d 1, 5 (1st Cir. 2019). Our review of the factual findings of the agency proceeds pursuant to the substantial evidence standard. See Perez-Rabanales v. Sessions, 881 F.3d 61, 65 (1st Cir. 2018). "Under this highly deferential standard, we must accept the [agency's] findings so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005)). This means that "the agency's factual findings will not be disturbed unless 'the record is such as to compel a reasonable factfinder to reach a contrary determination.'" Id. (quoting Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012)).

To obtain relief in the form of withholding of removal, an alien must establish a clear probability that, if returned to his homeland, he will be persecuted on account of a statutorily protected ground. See 8 U.S.C. § 1231(b)(3)(A); Rodríguez-Villar v. Barr, 930 F.3d 24, 27 (1st Cir. 2019); Villafranca v. Lynch, 797 F.3d 91, 97 (1st Cir. 2015). In the case at hand, the petitioner's primary claim before the IJ was that his religious affiliation and activities were the cause of the persecution that he allegedly suffered. We hasten to add that "'[p]ersecution' is a term of art in immigration law." Carvalho-Frois v. Holder, 667 F.3d 69, 72 (1st Cir. 2012) (citing Lopez Perez v. Holder, 587 F.3d 456, 461 (1st Cir. 2009)). Establishing persecution requires

proof of three discrete elements: a threshold level of past or anticipated serious harm, a nexus between that harm and government action or inaction, and a causal connection to one of the five statutorily protected grounds.[2] See id. If an alien cannot carry the devoir of persuasion on all three of these elements, his claim of persecution fails. See Aguilar-De Guillen v. Sessions, 902 F.3d 28, 33 (1st Cir. 2018).

Of course, an alien must establish the same three elements in order to secure asylum. See, e.g., Sosa-Perez v. Sessions, 884 F.3d 74, 76-77 (1st Cir. 2018); Carvalho-Frois, 667 F.3d at 72. This is pertinent for present purposes because much of the relevant case law analyzes persecution claims in the asylum context. See, e.g., Xian Tong Dong v. Holder, 696 F.3d 121, 125-27 (1st Cir. 2012); Singh v. Mukasey, 543 F.3d 1, 5-7 (1st Cir. 2008); Romilus v. Ashcroft, 385 F.3d 1, 7-8 (1st Cir. 2004). And even though a withholding-of-removal claim requires a higher level of proof than an asylum claim — "[w]ithholding of removal requires that an alien establish a clear probability of persecution, rather than merely a well-founded fear of persecution," Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005) — asylum precedents may be helpful in analyzing withholding-of-removal cases.

---

[2] These statutorily protected grounds are race, religion, nationality, membership in a particular social group, and political opinion. See 8 U.S.C. § 1231(b)(3)(A).

In the interest of expedition, we turn directly to the third element of the petitioner's tripartite burden: whether the petitioner has established a causal relationship between his religious affiliation and activities and the harm that he alleges. A causal connection exists only if the statutorily protected ground (here, the petitioner's faith) was "one central reason" for the harm alleged. Singh, 543 F.3d at 5 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). In order to qualify as a "central reason" for the harm, the ground cannot be "incidental, tangential, superficial, or subordinate to another reason for harm." Id. (quoting In re J-B-N- & S-M-, 24 I. & N. Dec. 208, 214 (BIA 2007)). Clearly, perpetrators' statements may be "a crucial factor" for determining the central reason for harm. Id. at 7.

On this record, the agency's determination that the petitioner's unwillingness to join the gang — not his Christian faith or his faith-related activities — was the central reason for the claimed harm is supported by substantial evidence. See, e.g., INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992); Singh, 543 F.3d at 7. The gang members' statements, as recounted by the petitioner himself, are consistent with the IJ's conclusion that the harassment that the petitioner endured stemmed from the petitioner's failure to join the gang, facilitate its recruitment efforts, and participate in its criminal activities. The petitioner's testimony confirmed that gang membership was the

driving force (that is, the central reason) behind the harassment.[3] As the IJ noted, he also testified that the members who targeted him did not mention his religious affiliation or beliefs (above and beyond the fact that he was discouraging youth from joining the gang). The dialogue between the petitioner and the gang members thus buttresses the IJ's conclusion that gang recruitment was the raison d'être for the confrontations and the threatened harm.

The petitioner has a fallback position. He argues that "intense religious faith aligned with an equally firm political belief in non-violence and respect for the rule of law made it so he was an easy target [for] the MS-13." This argument misses the mark: it incorrectly focuses on the petitioner's reasons for refusing to join MS-13 rather than the motivation behind the harm allegedly inflicted by the gang members. It is the latter, not the former, that necessarily guides the persecution inquiry. See Romilus, 385 F.3d at 7 (holding that petitioner had failed to establish persecution on account of a statutorily protected ground because he did not furnish sufficient evidence of alleged persecutors' motive).

---

[3] The petitioner testified that the gang members "told [him] that if [he] didn't participate with them, that they were going to kill" him. He also testified that the gang members "said what they always say," warning him that if he was not with them, that he was against them.

The petitioner also suggests that the IJ failed to account for potential future harm. The record, though, belies this suggestion. The IJ supportably found that the petitioner's professed fear of future harm was undercut by the fact that his father and siblings, who share the petitioner's religious affiliation, continue to live in El Salvador without experiencing religious persecution of any sort at the hands of gang members. See Sela v. Mukasey, 520 F.3d 44, 46-47 (1st Cir. 2008) (concluding that the fact that the petitioner's family members had remained in his homeland without incident detracted from his claim that he was likely to face future persecution there on account of his religion); Budiono v. Mukasey, 548 F.3d 44, 50 (1st Cir. 2008) (same).

That ends this aspect of the matter. The agency's determination that the petitioner failed to show an entitlement to withholding of removal based on a clear probability of either past or future religious persecution is supported by substantial evidence in the record, and we uphold it.

**B**

Before the BIA, the petitioner shifted gears and attempted to argue that he faced persecution in El Salvador because of his membership in a cognizable social group. See 8 U.S.C. § 1231(b)(3)(A); see also Vega-Ayala v. Lynch, 833 F.3d 34, 39 (1st Cir. 2016) (explicating multifactor test for determining

existence of cognizable social group).  In this court, he contends that the BIA erred in concluding that he had not properly raised this argument before the IJ and, thus, that it was foreclosed on appeal.  Specifically, he says that he articulated his membership in a variety of Christian-based social groups before the IJ but that the IJ failed to conduct a "meaningful inquiry" into these activities.

The government's response is twofold.  First, it insists — consistent with one of the BIA's holdings — that the petitioner failed to raise a "social group" argument with sufficient specificity before the IJ.  Second, it insists that, in his briefing to this court, the petitioner has failed to develop any argument that fairly challenges the BIA's alternate holding:  that, in all events, the petitioner failed to show that he was a victim of persecution on account of his membership in a cognizable social group.

The record is less than pellucid as to whether and to what extent the petitioner alleged his membership in a particular social group as a ground for persecution before the IJ.  Here, however, we need not attempt to mine that uncertain terrain.  When, as in this case, an agency premises a decision on alternate grounds, each of which is independently sufficient, we may uphold its decision if either ground is supportable.  See Lee v. Barr, 975 F.3d 69, 73-74 (1st Cir. 2020); Wiratama v. Mukasey, 538 F.3d

1, 6-7 (1st Cir. 2008).  Because the BIA — in an alternate holding — rejected the "social group" claim on its merits, see In re Sanchez-Vasquez, at *2, and the petitioner has not challenged that alternate holding, we reject the petitioner's claim of error.

We need not tarry.  The BIA's decision clearly held, in the alternative, that:

> [W]ith respect to the proposed social groups, the [petitioner] does not highlight evidence of record indicating that Salvadoran society views any of the alleged groups as a socially distinct segment of society.  He therefore has not shown that any of the belatedly raised groups could be cognizable for purposes of establishing his eligibility for withholding of removal.

Id. (internal citation omitted).  Nowhere in his brief does the petitioner attempt either to contest this holding or to explain how any of the groups that he mentioned — "Christian Youth Group members in El Salvador," "Evangelical Salvadoran religious Youth Group members," "Evangelical Christian Salvadoran men," and "Christian Salvadoran men who believe in the rule of law" — satisfy the multifactor test necessary to establish a cognizable social group.  In other words, the petitioner's brief in this court — like his brief before the BIA — does not explain how any of the putative social groups satisfy the statutory definition.  Indeed, the brief does not so much as acknowledge that the BIA addressed the merits of the "social group" claim in its decision.

We have long held "that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Zannino, 895 F.2d at 17. This doctrine is fully applicable in the immigration context, see, e.g., Zaruma-Guaman, 988 F.3d at 8; Olmos-Colaj v. Sessions, 886 F.3d 168, 176 (1st Cir. 2018); Ahmed, 611 F.3d at 98, and this case falls squarely within the heartland of the doctrine. Consequently, we deem the "social group" argument waived.

## C

The petitioner's last assignment of error relates to the BIA's refusal to accord decretory significance to his newly proffered evidence. This assignment of error has several strands, and some stage-setting is useful.

When the petitioner appealed to the BIA, he proffered a slew of documents. These documents — all of which were available at the time of the hearing before the IJ and none of which were offered into evidence at that hearing — were in the nature of country conditions reports. They were submitted to the BIA in support of the petitioner's contention that the IJ should have taken administrative notice that Evangelical Christians in El Salvador are targeted for harm by Salvadoran gangs.

The BIA treated this proffer as a motion to remand. It then denied the motion, finding that administrative notice was unwarranted because the fact in dispute — whether and to what

extent Salvadoran gangs targeted Christians — was not a commonly known fact about which the IJ appropriately could have taken administrative notice.

Before us, the petitioner makes a number of interrelated points. At the start, the petitioner repeats his assertion that the IJ should have taken administrative notice that Evangelical Christians are targeted by gang members in El Salvador. The BIA rejected this contention, concluding that the petitioner "has not shown that this is a commonly known fact about which the [IJ] could appropriately take administrative notice." In re Sanchez-Vasquez, at *1. The proffered documents do nothing to fill this void. After all, they were submitted for the first time to the BIA and were never submitted to the IJ. The IJ cannot either have erred or abused her discretion in failing to take administrative notice of evidence that was neither presented to her nor called to her attention. Cf. Shah v. Holder, 758 F.3d 32, 37 (1st Cir. 2014) ("[T]he BIA could not have, as petitioner argues, abused its discretion in overlooking details of the Country Report where the report was not even in the administrative record.").

Next, the petitioner — in a variation on this theme — argues that the BIA erred by declining to remand the case to the IJ for consideration of the proffered documents. The petitioner does not object to the BIA's characterization of his proffer as a motion to remand, and for purposes of judicial review, we "treat

a motion to remand as a motion to reopen." Morgan, 634 F.3d at 60. Judicial review of an order denying a motion to reopen is for abuse of discretion. See Perez v. Holder, 740 F.3d 57, 61 (1st Cir. 2014). "To 'prevail under this standard, the movant must carry the heavy burden of establishing that the BIA made an error of law or acted in a manifestly arbitrary or capricious manner.'" Nantume v. Barr, 931 F.3d 35, 38 (1st Cir. 2019) (quoting Roberts v. Gonzales, 422 F.3d 33, 35 (1st Cir. 2005)).

Here, the petitioner does not claim an error of law and, thus, our inquiry reduces to whether the BIA acted arbitrarily or capriciously in declining to remand. This inquiry starts with the petitioner's second "administrative notice" argument — an argument suggesting that the BIA itself should have taken administrative notice of the proffered documents. Such an argument runs headlong into the settled principle that the BIA has wide discretion in deciding whether to take administrative notice of certain facts. See Yang Zhao-Cheng v. Holder, 721 F.3d 25, 28-29 (1st Cir. 2013). When it elects to exercise this discretion affirmatively, "the BIA can take 'administrative notice of commonly known facts such as current events or the contents of official documents.'" Perera v. Holder, 750 F.3d 25, 30 (1st Cir. 2014) (quoting 8 C.F.R. § 1003.1(d)(3)(iv)). It is, however, not required to do so. See Yang Zhao-Cheng, 721 F.3d at 28.

In all events, we do not think that the BIA's refusal to take administrative notice of the petitioner's proffered documents — documents never submitted to the IJ despite their availability and unrelated to the petitioner's particular circumstances — can plausibly be termed arbitrary or capricious. See Mazariegos v. Lynch, 790 F.3d 280, 288 (1st Cir. 2015); Hang Chen v. Holder, 675 F.3d 100, 106-08 (1st Cir. 2012). This is particularly true because (as we explain below) the proffered documents do nothing to further the petitioner's claim of religious persecution.

The last strand of the petitioner's overall argument posits that the BIA abused its discretion by not remanding the case to the IJ for further proceedings. The BIA grounded its decision not to remand in its determination that the documents had been available to the petitioner all along. It stated that:

> The [petitioner]'s contention that as a non-English speaker he could not timely submit the evidence attached to his appellate brief because he was detained and proceeding pro se does not persuade us that the information provided in the late-filed documentation was previously unavailable or could not have been discovered or presented before the [IJ] prior to the [petitioner]'s final removal hearing.

In re Sanchez-Vasquez, at *2 (internal citation omitted).

The supportability of this determination presents a close call. On the one hand, the petitioner was — as he asserts — a non-English speaker, proceeding pro se, and in custody during the period in which hearings were held before the IJ. On the other

- 18 -

hand, the IJ displayed considerable solicitude toward the petitioner, appointed standby counsel for him, explained the procedure for obtaining additional documents to him, and continued the proceedings several times to allow the petitioner a fair opportunity to assemble such documents.

In the end, the deference due under the commodious abuse-of-discretion standard dictates the outcome — especially since the petitioner fails to grapple with any of the continuances he was granted, with the assistance his standby counsel provided in preparing his application for relief, or with the fact that the IJ made available to him a list of organizations that provide free and/or low-cost legal advice to individuals in removal proceedings. In the absence of any meaningful explanation from the petitioner as to why the proffered documents were unavailable to him in light of those resources, we cannot say that the BIA abused its discretion in finding "not persua[sive]," on the record before it, his contentions about why he could not have submitted the documents in a timely manner.

## III

We need go no further. For the reasons elucidated above, the petition for judicial review is

**Denied**.