# Matter of M-F-O-, Respondent

*Decided November 4, 2021*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A notice to appear that does not specify the time or place of a respondent's initial removal hearing does not end the accrual of physical presence for purposes of voluntary departure at the conclusion of removal proceedings under section 240B(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229c(b) (2018), even if the respondent is later served with a notice of hearing specifying this information. *Posos-Sanchez v. Garland*, 3 F.4th 1176 (9th Cir. 2021), followed. *Matter of Viera-Garcia and Ordonez-Viera*, 28 I&N Dec. 223 (BIA 2021), overruled in part.

FOR RESPONDENT: Edgardo Quintanilla, Esquire, Sherman Oaks, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Michelle Morton, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Deputy Chief Appellate Immigration Judge; CREPPY and LIEBOWITZ, Appellate Immigration Judges.

MALPHRUS, Deputy Chief Appellate Immigration Judge:

In a decision dated May 16, 2018, an Immigration Judge denied the respondent's application for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A) (2018), and for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The Immigration Judge also denied the respondent's request for voluntary departure under section 240B(b) of the Act, 8 U.S.C. § 1229c(b) (2018). The respondent has appealed from this decision and requested that we terminate his removal proceedings.[1] We will deny his motion to terminate and dismiss his appeal

---

[1] During the pendency of this appeal, the parties filed supplemental briefs addressing the respondent's eligibility for asylum, withholding of removal, and protection under the Convention Against Torture as well as the impact, if any, of the United States Supreme

with regard to the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture. However, we will sustain his appeal with respect to the denial of voluntary departure. In this regard, we will overrule, in part, our precedential decision in *Matter of Viera-Garcia and Ordonez-Viera*, 28 I&N Dec. 223 (BIA 2021), and remand the record to the Immigration Judge for further consideration of the respondent's eligibility for voluntary departure.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Guatemala who applied for admission to the United States without valid entry documents. He was placed in removal proceedings with the service of a notice to appear that failed to specify the time or place of his initial removal hearing. He was later served with notices of hearing specifying this information, and he appeared for all of his removal hearings.[2] During proceedings, the respondent filed an application for asylum and related forms of relief and protection from removal and requested voluntary departure. In support of his application, he testified that criminal gang members attacked him on six occasions, beating him each time, robbing him during some of these incidents, and threatening him with a knife during the last incident. He further testified that the gang members approached him in an effort to recruit him because they were trying to recruit more young people. The gang members spoke to him in his indigenous dialect, demanding that he join their gang and only released him after he asked for more time to consider their demand or falsely promised to join them at a later date. The respondent claimed the gangs harmed him, and will target him in the future, because he is a member of a particular social group composed of indigenous Guatemalan youths who have abstained from joining the street gangs.

The Immigration Judge denied the respondent's application for asylum and withholding of removal after finding, among other things, that he had not demonstrated the requisite nexus between the past and feared harm and a valid social group.[3] The Immigration Judge also concluded that the

---

Court's decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), on the respondent's eligibility for voluntary departure.

[2] The Immigration Judge initially terminated the respondent's removal proceedings, but we vacated his termination order on appeal, reinstated the proceedings, and remanded for entry of a new decision.

[3] The Immigration Judge also found that the respondent's asylum application was untimely filed. However, the parties have stipulated on appeal that the respondent is a member of the class identified in *Rojas v. Johnson*, 305 F. Supp. 3d 1176, 1179

respondent was ineligible for protection under the Convention Against Torture. Finally, the Immigration Judge found that the notice to appear in this case precluded the respondent from accruing the requisite period of continuous physical presence for purposes of voluntary departure at the conclusion of removal proceedings pursuant to section 240B(b) of the Act.

## II. ANALYSIS

### A. Asylum and Withholding of Removal

For purposes of this appeal, we will assume without deciding that the respondent has established the validity of his proposed social group of indigenous Guatemalan youths who have abstained from joining the street gangs and demonstrated his membership in it. However, we will affirm the Immigration Judge's finding that he has not demonstrated the requisite nexus between the past or feared harm and his membership in this group.[4] *See Matter of H-L-S-A-*, 28 I&N Dec. 228, 234 n.5 (BIA 2021) (explaining that "an applicant must not only demonstrate that th[e] group is valid and he is a member of this group, but also the requisite nexus between group membership and any persecution"); *see also Ayala v. Holder*, 640 F.3d 1095, 1097 (9th Cir. 2011) (per curiam). To establish the requisite nexus for purposes of asylum, the respondent must demonstrate that his membership in his proposed social group was or would be "one central reason" for the past or feared harm. Section 208(b)(1)(B)(i) of the Act. For purposes of withholding of removal, because this case arises within the jurisdiction of the United States Court of Appeals for the Ninth Circuit, he must only

---

(W.D. Wash. 2018), and thus his application is not untimely. *See Matter of A-C-A-A-*, 28 I&N Dec. 351, 352 (A.G. 2021) (permitting the Board to rely on party stipulations). *See generally Rojas v. Wolf*, No. 16-cv-01024 (W.D. Wash. Nov. 4, 2020) (approving settlement agreement).

[4] For the first time on appeal, the respondent asserts he was harmed and fears harm in Guatemala based on his race, "Kanjobal Maya," and his membership in another social group, "Kanjobal Maya who abstain from joining gangs." However, the respondent, who testified that his race was "Maya" below, was represented by counsel before the Immigration Judge and did not advance these additional grounds during his removal hearings. Thus, they are not properly before us. *See Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189, 190 (BIA 2018) (holding that we generally will not consider an argument that could have been, but was not, raised before the Immigration Judge); *see also Honcharov v. Barr*, 924 F.3d 1293, 1297 (9th Cir. 2019) (per curiam). Even if the respondent had argued below that he was "Kanjobal Maya," which we recognize refers to a specific subgroup within the Guatemalan Mayan community, it would not alter our conclusion that he has not established the requisite nexus between the past and feared harm and a protected ground.

demonstrate, pursuant to controlling precedent in this circuit, that his membership in his proposed social group was or would be "a reason" for the harm. *Garcia v. Wilkinson*, 988 F.3d 1136, 1146 (9th Cir. 2021).[5]

The Immigration Judge did not clearly err in finding that gang members targeted the respondent in Guatemala because they wanted him to join their ranks and that his membership in his proposed group was not, nor would it be, "one central reason" or "a reason" for the past or feared harm. *See Matter of N-M-*, 25 I&N Dec. 526, 532 (BIA 2011) ("A persecutor's actual motive is a matter of fact to be determined by the Immigration Judge and reviewed by us for clear error."). The respondent does not claim that these gang members told him they were targeting him because he was an indigenous Guatemalan youth who refused to join their ranks. Rather, he believes that he was targeted on this basis because the gang members communicated with him in his indigenous dialect and indigenous individuals are a minority in Guatemala. However, as the Immigration Judge noted, a majority of those residing in the area where the respondent was harmed are indigenous. Even if the gang members were aware of the respondent's indigenous status based on the demographics of the area and their ability to communicate with him in an indigenous dialect, in light of the facts of this case, this evidence alone does not establish that his membership in his proposed social group was or would be "one central reason" or "a reason" for the past or feared harm. *See Parussimova v. Mukasey*, 555 F.3d 734, 742 (9th Cir. 2009) (explaining that statements indicating that persecutors "were aware" of an applicant's ethnicity are insufficient to establish a nexus between his ethnicity and the alleged harm).

Moreover, this evidence is not inconsistent with the Immigration Judge's determination that the gang members simply wished to recruit him into their gang to expand their ranks, irrespective of his indigenous status. *See Matter of L-E-A-* ("*L-E-A- I*"), 27 I&N Dec. 40, 43–44 (BIA 2017) (providing that

---

[5]   While controlling circuit precedent provides that applicants for withholding of removal need only demonstrate that a protected ground was or would be "a reason" for past or future harm, many circuits agree with our conclusion that the "one central reason" standard applies to both applications for asylum and withholding of removal. *See Matter of C-T-L-*, 25 I&N Dec. 341, 350 (BIA 2010); *see also Singh v. Garland*, 11 F.4th 106, 114 (2d Cir. 2021); *Vazquez-Guerra v. Garland*, 7 F.4th 265, 271 (5th Cir. 2021); *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021); *Quintero v. Garland*, 998 F.3d 612, 631 (4th Cir. 2021); *Thayalan v. Att'y Gen. of U.S.*, 997 F.3d 132, 142 (3d Cir. 2021) (citing *Gonzalez-Posadas v. Att'y Gen. U.S.*, 781 F.3d 677, 684–85 & n.6 (3d Cir. 2015)); *Sanchez-Vasquez v. Garland*, 994 F.3d 40, 46–47 (1st Cir. 2021). *But see Guzman-Vazquez v. Barr*, 959 F.3d 253, 272–74 (6th Cir. 2020) (requiring applicants for withholding of removal to demonstrate that a protected ground was or would be "at least one reason" for the harm).

an applicant cannot demonstrate the requisite nexus if "the persecutor would have treated the applicant the same if the protected characteristic . . . did not exist").[6]  It is well established that Central American gangs direct harm "against anyone and everyone perceived to have interfered with, or who might present a threat to, their criminal enterprises and territorial power," including "those who refuse to join their ranks." *Matter of S-E-G-*, 24 I&N Dec. 579, 587 (BIA 2008).  "[T]hese motivations do not constitute persecution on account" of any valid protected ground. *Barrios v. Holder*, 581 F.3d 849, 856 (9th Cir. 2009) (citation omitted), *abrogated on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc).

The respondent has not pointed to any convincing direct or circumstantial evidence that his membership in a particular social group of indigenous Guatemalan youths who have abstained from joining the street gangs was, or would be, either "one central reason" or "a reason" for past or feared harm in Guatemala.[7]  The Immigration Judge was not required to accept the respondent's opinion that the gang members sought, or would seek, to harm him based on his membership in this group.  *See Macedo Templos v. Wilkinson*, 987 F.3d 877, 883 (9th Cir. 2021) (concluding that an applicant had not shown the requisite nexus where he failed to present evidence that the criminals who harmed him were "driven by the same motive, *beyond his*

---

[6]  The Attorney General overruled the portion of *L-E-A- I* relating to whether a nuclear family could constitute a viable social group but left undisturbed our nexus analysis. *Matter of L-E-A-* ("*L-E-A- II*"), 27 I&N Dec. 581, 596–97 (A.G. 2019).  Later, the Attorney General vacated *L-E-A- II* in its entirety.  *Matter of L-E-A-* ("*L-E-A- III*"), 28 I&N Dec. 304, 305 (A.G. 2021).  Thus, our nexus analysis in *L-E-A- I* remains good law.

[7]  Although the Immigration Judge properly applied the "a reason" standard in denying the respondent's application for withholding of removal, he went on to say he was denying that application because it "requires a more objective and stringent burden of proof."  While it is true that the burden of proof for withholding of removal regarding the likelihood of harm is higher than it is for asylum, *see Matter of M-A-S-*, 24 I&N Dec. 762, 765 (BIA 2009), in most jurisdictions the same nexus standard, the "one central reason" standard, applies to both asylum and withholding of removal, *see, e.g.*, *Matter of C-T-L-*, 25 I&N Dec. at 350.  In the remaining jurisdictions, the "a reason" nexus standard for withholding of removal "includes 'weaker motives'" than the "one central reason" nexus standard for asylum.  *Garcia*, 988 F.3d at 1146 (citation omitted); *see also Guzman-Vazquez*, 959 F.3d at 272–74.  Where the denial of withholding of removal turns on the issue of nexus, an Immigration Judge should not state that withholding of removal is being denied as a result of a higher burden of proof.  Instead, an Immigration Judge should only do so when the denial turns on the likelihood of harm.  To the extent the Immigration Judge erred in this regard, it was harmless error in this case.

*opinion*" (emphasis added)).[8]  "[T]he reason[] that generate[d] the dispute" in this case, as the Immigration Judge found, was the gang members' desire to expand their ranks.  *Matter of L-E-A- I*, 27 I&N Dec. at 45; *see also Matter of J-C-H-F-*, 27 I&N Dec. 211, 217 (BIA 2018) (applying clear error standard of review).  We will therefore affirm the Immigration Judge's decision to deny the respondent's application for asylum under section 208(b)(1)(A) and withholding of removal under section 241(b)(3)(A) of the Act.

The respondent also has not established any basis to disturb the Immigration Judge's alternative finding that he did not experience, nor would he experience, persecution committed by forces the Guatemalan Government is unable or unwilling to control.  *See J.R. v. Barr*, 975 F.3d 778, 782 (9th Cir. 2020) (stating that to establish a persecution claim based on violence inflicted by gang members, an applicant must show the government of the country of removal is "'unable or unwilling' to control them" (citation omitted)).  Consequently, we will also affirm the Immigration Judge's denial of asylum and withholding of removal on this independent basis.

## B.  Convention Against Torture

We will also affirm the Immigration Judge's determination that the respondent has not established his eligibility for protection under the Convention Against Torture.  *See* 8 C.F.R. §§ 1208.16(c), 1208.18(a) (2021).  We agree with the Immigration Judge that the harm the respondent experienced in Guatemala—specifically, threats and bruises that did not require medical attention—do not satisfy the regulatory definition of torture.  *See* 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment . . . .").  The respondent was last harmed in Guatemala more than 4 years ago, when he was a teenager, and he has not shown that the gang members who threatened and harmed him in that country are still interested in locating him and targeting him for harm, let alone torture.  *See*

---

[8]   The respondent contends that the Immigration Judge erroneously required him to show that his social group membership accounted for 51 percent of the gang members' motivation.  However, the Immigration Judge's nexus analysis does not rest on such a showing, since he explicitly found that the respondent did not establish his social group "has any nexus" to past or feared harm.  *See Santos-Ponce v. Wilkinson*, 987 F.3d 886, 890 (9th Cir. 2021) (observing that where "there was no nexus at all," there is "no distinction between the 'one central reason' phrase in the asylum statute and the 'a reason' phrase in the withholding statute" (citation omitted)).

*Barajas-Romero v. Lynch*, 846 F.3d 351, 363 (9th Cir. 2017) (providing that Convention Against Torture "relief is forward-looking, requiring the applicant prove that it is more likely than not that he would be tortured if he were removed to the proposed country"). The respondent's "speculative fear of torture is insufficient to satisfy the 'more likely than not' standard" for Convention Against Torture protection. *Garcia*, 988 F.3d at 1148. Moreover, the respondent's generalized assertions concerning governmental corruption and disparate treatment of indigenous people in Guatemala are insufficient to establish that it is more likely than not that he will be tortured in that country by or with the consent or acquiescence of a government official or an individual acting in an official capacity. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curiam).[9] Consequently, the Immigration Judge's predictive findings have not been shown to be clearly erroneous, and we will affirm his decision to deny the respondent's application for protection under the Convention Against Torture. *See Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015) (reviewing an Immigration Judge's predictive findings for clear error).

## C. Jurisdiction

The respondent's argument that his removal proceedings should be terminated because his notice to appear failed to specify the time or place of his initial removal hearing, thereby depriving the Immigration Judge of jurisdiction over his proceedings, is foreclosed by our precedential decisions in *Matter of Bermudez-Cota*, 27 I&N Dec. 441 (BIA 2018), and *Matter of Arambula-Bravo*, 28 I&N Dec. 388 (BIA 2021). As we explained in those decisions, the filing of a notice to appear vests an Immigration Judge with jurisdiction over proceedings, even if that notice fails to specify the time or place of the hearing, so long as a notice of hearing specifying this information is later sent to a respondent. *See Matter of Arambula-Bravo*, 28 I&N Dec. at 390–91; *Matter of Bermudez-Cota*, 27 I&N Dec. at 447. We held, moreover, that neither the United States Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), nor its decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), require the termination of removal proceedings when a notice to appear fails to specify the time or place of a removal hearing.[10] *Matter of Arambula-Bravo*, 28 I&N Dec. at 391; *Matter*

---

[9]  Contrary to the respondent's contentions, the Immigration Judge appropriately assessed whether he, "in particular," would be tortured in Guatemala. *Garcia*, 988 F.3d at 1147.

[10]  In *Niz-Chavez* and *Pereira*, the Supreme Court interpreted sections 239(a) and 240A(d)(1) of the Act, 8 U.S.C. §§ 1229(a) and 1229b(d)(1) (2018), provisions we address in more detail below.

*of Bermudez-Cota*, 27 I&N Dec. at 447; *see also United States v. Bastide-Hernandez*, 3 F.4th 1193, 1196 (9th Cir. 2021).

As noted, after the notice to appear in this case was served on the respondent and filed with the Immigration Court, the respondent received notices of hearing specifying the time and place of his hearings, and the respondent appeared for all of these hearings. We will therefore deny the respondent's motion to terminate.[11]

## D. Voluntary Departure

To establish his eligibility for voluntary departure at the conclusion of proceedings pursuant to section 240B(b) of the Act, the respondent must demonstrate, among other things, that he "has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under" section 239(a) of the Act, 8 U.S.C. § 1229(a) (2018). Section 240B(b)(1)(A) of the Act. Section 239(a)(1)(G)(i) of the Act, in turn, requires that a "notice to appear" specify the "time and place at which" the initial removal hearing "will be held." We previously recognized in *Matter of Viera-Garcia and Ordonez-Viera*, 28 I&N Dec. at 225–26, that the language at section 240B(b)(1)(A) of the Act is similar to the language of the so-called "stop-time" rule at section 240A(d)(1)(A) of the Act, 8 U.S.C. § 1229b(d)(1)(A) (2018), which ends the accrual of continuous physical presence for purposes of cancellation of removal "when the [respondent] is served a notice to appear under section 239(a)." We additionally recognized that the Supreme Court concluded in *Pereira*, 138 S. Ct. at 2110, that a notice to appear that fails to specify the time or place of a removal hearing does not end the period of continuous physical presence under the "stop-time" rule at section 240A(d)(1) of the Act. Consistent with our past precedents,[12] we held in *Matter of Viera-Garcia and Ordonez-Viera* that where a notice to appear fails to specify the time or place of a respondent's removal hearing, the service of a notice of hearing specifying this information perfects the notice to appear, satisfies the requirements of

---

[11] Although the respondent argues on appeal that he is a low enforcement priority and that his removal proceedings should be terminated or dismissed without prejudice on this basis, it is within the Department of Homeland Security's prerogative to exercise prosecutorial discretion in that manner. *See, e.g.*, *Matter of J-A-B- & I-J-V-A-*, 27 I&N Dec. 168, 170 & n.3 (BIA 2017).

[12] Specifically, we relied on *Matter of Bermudez-Cota* and *Matter of Mendoza-Hernandez and Capula-Cortes*, 27 I&N Dec. 520, 529 (BIA 2019). We held in the latter case that a deficient notice to appear that fails to specify the time or place of proceedings is perfected by the service of a notice of hearing specifying this information, satisfies the notice requirement of section 239(a), and triggers the "stop-time" rule under section 240A(d)(1).

section 239(a), and ends the accrual of physical presence for purposes of voluntary departure pursuant to section 240B(b)(1)(A) of the Act.

Following the issuance of *Matter of Viera-Garcia and Ordonez-Viera*, the Supreme Court held in *Niz-Chavez*, 141 S. Ct. at 1480, that, to trigger the "stop-time" rule under section 240A(d)(1), a notice to appear must be a single document containing all the information about a respondent's removal hearing specified in section 239(a) of the Act, including the time and place of the initial hearing. We agree with the parties that our holding in *Matter of Viera-Garcia and Ordonez-Viera* does not survive *Niz-Chavez*. We hereby overrule *Matter of Viera-Garcia and Ordonez-Viera*, to the extent it held that a defective notice to appear can end a respondent's accrual of physical presence pursuant to section 240B(b)(1)(A) of the Act.[13]

Based on *Pereira* and *Niz-Chavez*, the Ninth Circuit, in whose jurisdiction this case arises, has likewise concluded in binding precedent that, for purposes of section 240B(b)(1)(A), the service of a notice of hearing cannot cure a notice to appear that lacks the time or date of a respondent's initial removal hearing. *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1185–86 (9th Cir. 2021). The court first noted that the phrase "under section 239(a)" in section 240B(b)(1)(A) of the Act means that the Department of Homeland Security must serve a respondent with a notice to appear "containing all the information that Congress listed in [section 239(a)]," including the time and place of the initial hearing. *Id.* at 1185; *see also Pereira*, 138 S. Ct. at 2117 (interpreting the phrase "under section 239(a)" in section 240A(d)(1) as requiring the service of a notice to appear "'in accordance with' or 'according to'" the requirements of section 239(a) (citation omitted)). The court also found it significant that section 240B(b)(1)(A) speaks of "the date the notice to appear was served." *Posos-Sanchez*, 3 F.4th at 1184 (quoting section 240B(b)(1)(A) of the Act). The court found that Congress used the definite article "the" in combination with the singular nouns "date" and "notice to appear" in section 240B(b)(1)(A) to "equate[] servi[ng]" a notice to appear under section 239(a) "with a discrete moment, not an ongoing endeavor." *Id.* at 1185 (second alteration in original) (quoting *Niz-Chavez*, 141 S. Ct. at 1483). Accordingly, the court reasoned that a respondent accrues physical presence for purposes of section 240B(b)(1)(A) from the moment he enters the United States until he is served with a single document providing him with all the information required by section 239(a) of the Act. We agree with the Ninth Circuit's reasoning and will apply it nationwide. *See generally Matter of Ortega-Lopez*, 27 I&N Dec. 382, 387 (BIA 2018) (noting "the

---

[13] We also overrule *Matter of Mendoza-Hernandez and Capula-Cortes* to the extent it conflicts with the Court's holding in *Niz-Chavez*.

paramount need for 'uniformity in the administration of immigration laws'" (citation omitted)).

As noted, the respondent was served with a notice to appear that did not specify the time or place of his initial removal hearing. Although he was later served with a notice of hearing specifying this information, the notice of hearing otherwise lacked the information listed in section 239(a)(1). As a result, the deficient notice to appear in this case does not preclude the respondent from establishing the requisite period of continuous physical presence for purposes of section 240B(b)(1)(A) of the Act. *See Posos-Sanchez*, 3 F.4th at 1185. Consequently, we will remand the record for the Immigration Judge to evaluate in the first instance whether the respondent is otherwise statutorily eligible for voluntary departure under sections 240B(b)(1)(B) through (D) of the Act, and whether he merits voluntary departure in the exercise of discretion. *See* section 240(c)(4)(A) of the Act, 8 U.S.C. § 1229a(c)(4)(A) (2018).[14]

Accordingly, the respondent's motion to terminate is denied, and his appeal from the Immigration Judge's decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture is dismissed. His appeal from the Immigration Judge's decision denying his request for voluntary departure is sustained, and the record is remanded for further consideration of his eligibility for voluntary departure at the conclusion of proceedings under section 240B(b) of the Act.

**ORDER:**  The respondent's motion to terminate is denied, and his appeal is dismissed in part and sustained in part.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[14] In light of our disposition of the respondent's appeal on the foregoing dispositive grounds, we need not reach his remaining appellate arguments. *See, e.g.*, *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").