# United States Court of Appeals
## For the First Circuit

No. 21-1315

EBENEZER ODEI,

Petitioner,

v.

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, <u>Chief Judge</u>,
Selya and Gelpí, <u>Circuit Judges</u>.

<u>Stella B. Angwafo</u> and <u>Stella B. Angwafo Law Office</u> on brief for petitioner.
<u>Brian M. Boynton</u>, Principal Deputy Attorney General, Civil Division, United States Department of Justice, <u>John S. Hogan</u>, Assistant Director, Office of Immigration Litigation, and <u>Andrea Gevas</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

June 15, 2023

**SELYA**, <u>Circuit Judge</u>.  This case has its roots in a land grab that occurred long ago and far away.  The petitioner, Ebenezer Odei, traces his membership in a particular social group back to events that occurred in his native Ghana in 1984 and claims that — if repatriated — he has a reasonable fear of persecution on account of his membership in that social group.  The immigration judge (IJ) and the Board of Immigration Appeals (BIA) both rejected the petitioner's claim.  He now seeks judicial review.  After careful consideration, we deny the petition.

**I**

We briefly rehearse the relevant facts and travel of the case.  On November 14, 2001, the petitioner entered the United States on a B-2 visa as a nonimmigrant visitor.  He overstayed that visa but nonetheless attempted to secure legal status — well after the visa's expiry — through marriage to a United States citizen.  By virtue of this marriage, he applied for an adjustment of status, and his wife concurrently petitioned, on his behalf, for an I-130 immigrant visa.  Those efforts, though, came to naught:  in September of 2009, the United States Citizenship and Immigration Services (USCIS) denied the visa petition on the ground that the couple had failed to prove the bona fides of their marriage.  Consequently, the application for adjustment of status also was denied.

The Department of Homeland Security then notified the petitioner that he was subject to removal and ordered him to appear before the immigration court for removal proceedings. Those proceedings were stayed for some time to adjudicate additional successive I-130 petitions filed on the petitioner's behalf. In June of 2011, the petitioner's wife again sought an I-130 immigrant visa, which was denied when the couple failed to appear for a required interview with USCIS officials. In September of 2012, the couple divorced. The petitioner remarried in June of the following year, and his second citizen-spouse, like the first, filed an I-130 petition to his behoof. That petition was also denied.

Removal proceedings resumed in December of 2015. The petitioner conceded removability but cross-applied for withholding of removal and protection under the United Nations Convention Against Torture (CAT). In support, he testified that his family had been displaced from their cocoa farm in Ghana when a local chieftain expropriated the property in 1984. According to the petitioner, the chieftain demanded that his father relinquish the farm, and when his father refused, the chieftain retaliated by burning the farm and beating his parents. Still, the family remained in place. The chieftain was not pleased and had the petitioner and his brothers beaten.

- 3 -

Following this second act of violence, the family fled to the capital city of Accra, where they lived for fifteen years. Eventually, the petitioner travelled from there to the United States. He claimed that if returned to Ghana, he would be tortured and killed because his family never surrendered formal title to the land that was taken from them.

The IJ was unpersuaded. She found that the petitioner was not a credible witness; that he had failed to show that he belonged to a persecuted social group; and that the persecution he claimed to have suffered was not on account of a statutorily protected ground but, rather, was due to the chieftain's desire to give the land to another family. The IJ also found that the petitioner had failed to establish a clear probability that he would be persecuted in the future should he be returned to Ghana. Accordingly, the petitioner's applications for withholding of removal and protection under the CAT were denied, and the IJ ordered him removed to Ghana.

The petitioner appealed the IJ's denial of his application for withholding of removal (but not the denial of his CAT application) to the BIA. The BIA affirmed the IJ's decision, holding that the IJ's determination that the petitioner had failed to establish a causal connection between the chieftain's predations and a statutorily protected ground was not clearly erroneous. Because that issue was dispositive of the appeal, the

BIA refrained from addressing any other aspects of the IJ's decision.  After the BIA dismissed the petitioner's appeal, this timely petition for judicial review ensued.

**II**

"Where the BIA does not adopt the IJ's findings, we review the BIA's decision rather than the IJ's." Aguilar-Escoto v. Garland, 59 F.4th 510, 515 (1st Cir. 2023) (quoting Lin v. Mukasey, 521 F.3d 22, 26 (1st Cir. 2008)).  In this instance, the BIA did not expressly adopt the IJ's decision.  Instead, it held only that the IJ's finding on a dispositive issue was not clearly erroneous.  Our review thus focuses on the BIA's decision.  See id.

We review the BIA's legal conclusions de novo, albeit with "some deference to the agency's reasonable interpretation of statutes and regulations that fall within its sphere of authority." Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012).  "Our review of the factual findings of the agency proceeds pursuant to the substantial evidence standard." Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021).  Under that deferential standard, we accept the BIA's findings "so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quoting Perez-Rabanales v. Sessions, 881 F.3d 61, 65 (1st Cir. 2018)).  Thus, we will uphold those findings unless "the record is such as to compel a reasonable

- 5 -

factfinder to reach a contrary determination." Id. (quoting Perez-Rabanales, 881 F.3d at 65).

## III

To secure withholding of removal, a noncitizen must demonstrate a clear probability that, if removed to his homeland, he would be persecuted on account of his race, religion, nationality, membership in a particular social group, or political opinion. See Barnica-Lopez v. Garland, 59 F.4th 520, 527-28 (1st Cir. 2023); see also 8 U.S.C. § 1231(b)(3)(A). In order to establish that such persecution awaits him, the noncitizen must prove "a threshold level of past or anticipated serious harm, a nexus between that harm and government action or inaction, and a causal connection" between that harm and one of the statutorily protected grounds. Barnica-Lopez, 59 F.4th at 528. That burden can be satisfied by the petitioner's testimony if he is deemed credible, although the IJ may also require the submission of additional corroborating evidence, as long as it can reasonably be expected that such evidence can be obtained. See 8 U.S.C. §§ 1158(b)(1)(B)(ii); 1231(b)(3)(C).

The petitioner mounts four challenges in his petition for review. First, he assigns error to the IJ's adverse credibility determination. Second, he assigns error to the IJ's determination that he is not a member of a particular social group consisting of members of his own family who are opposed to the

- 6 -

chieftain and corruption. Third, he argues that he is entitled to withholding of removal because he is not free to return to his family's farm in Ghana. Fourth, he assigns error to the BIA's affirmance of the IJ's determination that the seizure of his family's farm was not on account of a statutorily protected ground. We address each of these challenges in turn.

**A**

The first two challenges can be quickly dispatched. The BIA did not address either the IJ's credibility determination or her rejection of the proposed definition of the social group to which the petitioner allegedly belonged (comprising members of the petitioner's own family who are opposed to the chieftain and corruption). The BIA affirmed the IJ's decision exclusively on the ground that the IJ did not clearly err in determining that the harm the petitioner suffered was not causally connected to his membership in a particular social group. In reaching this determination, the BIA implicitly assumed that the petitioner was credible and that he is a member of a particular social group. As we are reviewing the decision of the BIA, see Aguilar-Escoto, 59 F.4th at 515, those assumptions hold here.[1]

---

[1] We note that in one instance in his briefing, the petitioner recharacterizes his particular social group as members of his family "who have been deprived due to corruption from their patrimony." That group, albeit similar, would nonetheless be distinct from the particular social group that the petitioner proffered before the BIA. The petitioner, however, never argued

**B**

As to his third challenge, the petitioner argues that because 8 U.S.C. § 1231(b)(3)(A) prohibits the removal of a noncitizen to a country in which the noncitizen's "life or freedom would be threatened," he cannot lawfully be removed to Ghana as he would lack the "freedom" there to return to his family's farm. But this is too parochial a view, and the petitioner offers no case law or other relevant authority to support the proposition that so narrow a restriction on his freedom can amount to persecution. It is firmly settled in our jurisprudence that "arguments advanced in a perfunctory manner, unaccompanied by citations to relevant authority, are deemed waived." Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010); see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). That stricture is controlling.[2]

_____

to the BIA that he belonged to the former group, so a question of exhaustion emerges. Because the government has raised the exhaustion requirement and because the petitioner failed to argue before the BIA that he was a member of some additional social group, we find that such an argument is unexhausted. We therefore decline to consider it. See 8 U.S.C. § 1252(d)(1); see also Santos-Zacaria v. Garland, ___ S. Ct. ___, ___-___ (2023) [No. 21-1436, slip op. at 3-11] (holding that administrative exhaustion requirement set forth by 8 U.S.C. § 1252(d)(1) is not jurisdictional in nature but, rather, a claims-processing rule subject to forfeiture and waiver).

[2] In all events, the case law is antithetic to the petitioner's position. See Miranda-Bojorquez v. Barr, 937 F.3d 1, 5 (1st Cir. 2019) (explaining that government can rebut presumption that asylum applicant faces threat of future persecution in country of

- 8 -

This brings us to the petitioner's fourth challenge, which addresses the BIA's determination that the IJ did not commit clear error in finding that the harm suffered by the petitioner was not attributable to any statutorily protected ground. A causal connection between the harm incurred and the petitioner's statutorily protected ground exists only if the protected ground "was 'one central reason' for the harm alleged." Sanchez-Vasquez, 994 F.3d at 47 (quoting Singh v. Mukasey, 543 F.3d 1, 5 (1st Cir. 2008)). "[T]he statutorily protected ground need not be the sole factor driving the alleged persecution . . . ." Barnica-Lopez, 59 F.4th at 528 (quoting Loja-Tene v. Barr, 975 F.3d 58, 61 (1st Cir. 2020)). But a "central reason" cannot be "incidental, tangential, superficial, or subordinate to another reason for harm." Sanchez-Vasquez, 994 F.3d at 47 (quoting Singh, 543 F.3d at 5).

The petitioner does not squarely address this issue in his opening brief other than to suggest that because chieftains play a significant role in Ghanaian governance, the BIA incorrectly characterized the family's dispute with the chieftain as a personal dispute unconnected to any statutorily protected ground. That suggestion, though, conflates two different elements of the persecution analysis: one element that requires a connection

---

his nationality by showing that he can relocate to different part of that country); see also 8 C.F.R. § 208.13(b)(1)(i)(B).

between the harm suffered and government action or inaction and another that requires that the harm be connected to a statutorily protected ground.  See Barnica-Lopez, 59 F.4th at 528.

The BIA decision is not contrary to the petitioner's contention that the chieftain acted on behalf of the government. The BIA simply stated that reprisals perpetrated by government actors based on personal animosities are insufficient to establish a causal connection between the alleged harm and a protected ground.  That statement is correct.  See Sompotan v. Mukasey, 533 F.3d 63, 71 (1st Cir. 2008) ("Events that stem from personal disputes are generally not enough to show the required nexus."). And — mindful of the teachings of the case law — the BIA affirmed the IJ's finding that the interpersonal conflict between the petitioner's family and the chieftain was unconnected to a statutorily protected ground for relief.

The petitioner demurs.  Attempting to parry the BIA's finding, he argues that it was legal error for the BIA to countenance one motive for the chieftain's actions to the exclusion of others.  We agree, of course, that a noncitizen seeking relief need not demonstrate an unalloyed motive for persecution.  All that is required is that a motive implicating a statutorily protected ground be "'one central reason' for the harm alleged." Sanchez-Vasquez, 994 F.3d at 47 (quoting Singh, 543 F.3d at 5).

- 10 -

Here, however, the discussion is academic. The petitioner waited until his reply brief to raise this argument. It is thus waived. <u>See</u> <u>Xin Qiang Liu</u> v. <u>Lynch</u>, 802 F.3d 69, 75 (1st Cir. 2015).

**IV**

We need go no further. For the reasons elucidated above, we deny the petition.

**<u>So Ordered</u>**.