FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANGEL POSOS-SANCHEZ, AKA Elias Avalos Fonseca, AKA Angel Figueroa Martinez, AKA Pedro Soto-Hernandez, *Petitioner*, | No. 17-72002 Agency No. A092-724-951 |
| v. | OPINION |
| MERRICK B. GARLAND, Attorney General, *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 7, 2021
Pasadena, California

Filed July 7, 2021

Before: Kim McLane Wardlaw, Ronald M. Gould, and
John B. Owens, Circuit Judges.

Opinion by Judge Wardlaw

# SUMMARY[*]

## Immigration

Denying in part and granting in part Angel Posos-Sanchez's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that: 1) the agency correctly concluded that Posos had not been "admitted" to the United States and was therefore removable and ineligible to adjust his status; and 2) in light of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), the Notice to Appear (NTA) served on Posos – which lacked the time and date of his removal proceedings – did not terminate his period of physical presence in the United States and, as a result, the agency erred in finding him ineligible for voluntary departure on the ground that he had not been physically present for a year before service his NTA.

The panel concluded that the IJ correctly concluded that Posos had not been "admitted" as required by 8 U.S.C. § 1182(a)(6)(A)(i) (removability ground based on lack of admission) and 8 U.S.C. § 1255(a) (adjustment of status). The panel explained that 8 U.S.C. § 1101(a)(13)(A) defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer," and that, based on this court's precedent, unless an immigration official has inspected a noncitizen at a port of entry and then granted that noncitizen permission to enter the United States, that noncitizen has not been "admitted." Accordingly, the panel concluded that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Posos had not been admitted when agents at a border patrol checkpoint in San Clemente, California, apprehended and released him after he showed them his then-valid temporary resident card. The panel assumed that these actions could amount to "inspection and authorization," but explained the event did not take place at a "port of entry," as the checkpoint sits well within the United States. Noting that the court has read the term "admitted" more broadly when statutory context demanded, the panel found no factual or legal ground to do so here.

The panel observed that the BIA had reached the same result as the IJ, but concluded that the BIA erred in concluding that INS's ultimate decision to deny Posos temporary resident status would have undone any hypothetical admission at the checkpoint. The panel concluded that the BIA's reasoning turned on an erroneous interpretation of *United States v. Hernandez-Arias*, 757 F.3d 874 (9th Cir. 2014), explaining that, under *Hernandez-Arias*, noncitizens factually admitted at a U.S. port of entry while they hold temporary resident status do not magically become unadmitted once their temporary resident status ends. Nevertheless, because the IJ's legal analysis was sound, the panel affirmed the agency's conclusion that Posos was removable and ineligible to adjust status.

As to the denial of voluntary departure under 8 U.S.C. § 1229c, the panel concluded that the agency erred in concluding that Posos lacked the requisite period of physical presence prior to service of his NTA. Under § 1229c(b)(1)(A), an IJ must find, among other things, that the noncitizen "has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 1229(a)." The panel explained that, unlike the agency at the

time of Posos's proceedings, it had the benefit of the Supreme Court's decisions in *Pereira* and *Niz-Chavez*. In light of those rulings, the panel concluded that: 1) § 1229c(b)(1)(A) unambiguously requires that the NTA, if it is to stop a noncitizen from earning physical-presence time for voluntary departure, must comply with § 1229(a), which includes the requirement that the NTA include the time of removal proceedings; and 2) § 1229c(b)(1)(A) unambiguously envisions a § 1229(a) NTA as being a single document. Bringing these two principles together, the panel concluded: a noncitizen builds up physical-presence time under § 1229c(b)(1)(A) from the moment he enters the United States until the moment he receives a single document that provides him with all the information listed in § 1229(a). Explaining that this conclusion flows from the statute's unambiguous text, structure, and history, the panel concluded it had no need to defer to any previous interpretation advanced by the BIA.

Applying these principles to Posos's case, the panel concluded that he never received the NTA that § 1229c(b)(1)(A) demands because his NTA lacked the time and date of his hearing and, as a result, Posos continued to accrue physical-presence time ever since he entered the country in March 2011. Because Posos had over five years of physical-presence when the IJ ordered him removed, and thus indisputably satisfied § 1229c(b)(1)(A)'s physical-presence requirement, the panel concluded that the agency wrongly found Posos ineligible for voluntary departure. The panel remanded to the agency to make further findings and conclusions about Posos's eligibility for voluntary departure.

**COUNSEL**

Michael J. Selph (argued), Law Offices of Michael J. Selph, North Hollywood, California, for Petitioner.

Rachel L. Browning (argued), Trial Attorney; Keith I. McManus, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

WARDLAW, Circuit Judge

In September 1990, United States Border Patrol agents stopped Angel Posos-Sanchez at a border patrol checkpoint in San Clemente, California. They examined his immigration papers—which at the time authorized him to work and reside in the United States—and then let him go on his way. This incident became important decades later, when Posos faced removal proceedings. At that time, he applied to adjust his status and contested his removal from the United States because he claimed that the officials in San Clemente had "admitted" him to the United States. *See* 8 U.S.C. §§ 1101(a)(13)(A), 1182(a)(6)(A)(i), 1255(a).

Posos also applied for voluntary departure at the end of his removal proceedings, so that he could leave the United States on his terms. *See id.* § 1229c. He made that request even though he had not been physically present within the United States for a year before the Department of Homeland Security (DHS) served him with the operative Notice to Appear (NTA). At the time, he thus appeared ineligible for voluntary departure. *See id.* § 1229c(b)(1)(A). Yet his NTA

did not state the time or date of Posos's removal proceedings—a fact that now sets off alarm bells given the Supreme Court's groundbreaking decisions in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021).

Though Posos lost on both fronts before the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) (collectively "the agency"), we render a mixed verdict here. On the one hand, the agency properly found that immigration officials did not "admit" Posos to the United States when they allowed him to pass through the San Clemente checkpoint in 1990. He is therefore removable and ineligible to adjust his status. On the other hand, the agency erred in finding him ineligible for voluntary departure under § 1229c(b)(1)(A). The missing date-and-time information on Posos's NTA means that DHS never served him with the kind of NTA that § 1229c(b)(1)(A) demands. Accordingly, that NTA did not stop the clock for purposes of computing the time during which he was physically present in the United States under § 1229c(b)(1)(A). And as a result, Posos had racked up five years of physical presence when the IJ ordered him removed, and he was therefore eligible for voluntary departure if he satisfied the other statutory conditions.

We thus deny in part and grant in part Posos's petition and remand for further consideration of his application for voluntary departure.

## I.

### A.

Posos was born in Zacatepec, Mexico, and at age 17, he set out on foot for the United States. At some point in 1980,

he crossed the southern border of the United States without encountering American immigration authorities. He has lived, worked, and built a family here ever since.

During the first decade that Posos lived in the country, Congress passed the Immigration Reform and Control Act (IRCA), Pub. L. No. 99-603, 100 Stat. 3359 (1986), and the amnesty provisions therein, *see* 8 U.S.C. § 1255a. These amnesty provisions provided a path to permanent resident status for noncitizens who had resided unlawfully and been physically present in the United States since January 1, 1982. *See Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1134 (9th Cir. 1999). Qualifying noncitizens who wished to take advantage of this system applied "first for lawful temporary resident status, and then, after a one-year wait, for permanent residency." *Id.*

Posos applied for temporary resident status under this law, but, because of the law's confidentiality provisions, we aren't privy to every detail about that application. *See* 8 U.S.C. § 1255a(c)(5). Still, we know that, on May 4, 1988, the Immigration and Naturalization Service (INS) issued Posos a temporary resident card (Form I-688) that expired on November 30, 1990. This card stated that Posos could legally "reside and work in U.S. until [the] card expires." Then, on August 24, 1993, the INS informed Posos that his "application for the benefit of temporary resident status must be and is hereby denied." Nothing in the record suggests that Posos ever held either temporary or permanent resident status after August 24, 1993.

Yet his temporary resident card remained valid when immigration officials stopped him at the border patrol checkpoint in San Clemente, California on September 24, 1990. *See generally* 8 U.S.C. § 1357(a); 8 C.F.R. § 287.1(a). Posos lived in Riverside, California at the time, and had

traveled to San Diego for recreational purposes. On Posos's way back home, the border patrol agent manning the San Clemente checkpoint stopped Posos and his passengers and asked them about their citizenship status. Posos stated that he was a Mexican citizen and presented the border patrol agent with his valid temporary resident card. As a result, the border patrol agents released Posos on his own recognizance; his passengers, who were undocumented Mexican citizens, voluntarily elected to return to Mexico rather than face deportation proceedings.

After the INS denied his application for temporary resident status in 1993, Posos continued to live and work in the United States. However, in either 2010 or 2011, Immigration and Customs Enforcement removed Posos to Mexico (the record does not explain how or why this removal came about).

Seeking to reunite with his family, Posos tried to reenter the United States at the San Ysidro Port of Entry on March 9, 2011. There, immigration officials stopped the vehicle bringing him into the country and found him hiding in the trunk of the car. Posos admitted to these officials that he lacked the necessary documentation to enter or remain in the United States. They therefore detained him and referred him to the Immigration Court for removal proceedings.[1] Importantly for our purposes here, these immigration officials did not give Posos written, verbal, or nonverbal authorization to enter the United States, and Posos has never received such permission.

---

[1] Posos was released on bond on May 16, 2011.

B.

On May 2, 2011, DHS filed an NTA, alleging that Posos was removable as a native and citizen of Mexico, who had entered the United States without being admitted or paroled after inspection.  This NTA failed to state the date and time of Posos's removal proceedings.  Later on, however, DHS sent Posos notices of hearing containing that missing information.

Before the IJ, Posos conceded most of the allegations in the NTA, denying only the allegation that an immigration official had not "admitted" him to the United States.  He also applied for affirmative immigration relief, including adjustment of status under 8 U.S.C. § 1255(a), cancellation of removal under 8 U.S.C. § 1229b, and voluntary departure under 8 U.S.C. § 1229c.  In filing his application to adjust his status, Posos maintained that immigration officials had "admitted" him to the United States.

Posos offered two theories for his "admission" into the country.  First, he argued that he had been admitted when he received temporary resident status.  Second, he claimed that immigration officials had admitted him into the United States on September 24, 1990, when the border patrol agents at the San Clemente checkpoint apprehended and released him after he showed them his temporary resident card.

The IJ overseeing Posos's case rejected both arguments, thereby finding Posos removable and ineligible to adjust his status.  The IJ further denied Posos's application for cancellation of removal because Posos lacked a qualifying relative, and found Posos ineligible for voluntary departure because he had last entered the United States less than a year before DHS served him with the operative NTA.

On appeal before the BIA, Posos contested the IJ's decision as to his lack of an "admission" to the United States (based solely on the events at the San Clemente checkpoint) and the IJ's finding that he was ineligible for voluntary departure.[2] Citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (B.I.A. 1994), the BIA adopted and affirmed the IJ's decision, adding only that INS's ultimate decision to deny Posos temporary resident status would have undone any hypothetical admission at the San Clemente checkpoint. Posos timely petitioned for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) and § 1252(a)(2)(D).[3] Because the BIA cited *Matter of Burbano* and also provided its own analysis in this case, we review both the BIA and IJ's decisions. *Cordoba v. Barr*, 962 F.3d 479, 481 (9th Cir. 2020). We review the agency's legal conclusions de novo and review its factual findings for substantial evidence. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc).

---

[2] Posos did not pursue his earlier argument that he was still "admitted" to the United States based on his prior temporary resident status. Nor has he ever argued that immigration officials "paroled" him into the United States under 8 U.S.C. § 1182(a)(6)(A)(i) or § 1255(a). We thus lack jurisdiction to consider these issues. *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004).

[3] While we cannot review a discretionary denial of voluntary departure, 8 U.S.C. § 1252(a)(2)(B)(i), we have jurisdiction to correct erroneous interpretations of 8 U.S.C. § 1229c, *see id.* § 1252(a)(2)(D); *Corro-Barragan v. Holder*, 718 F.3d 1174, 1177 (9th Cir. 2013).

## III.

We first examine whether immigration officials "admitted" Posos to the United States at the San Clemente checkpoint on September 24, 1990—as Posos's removability and application to adjust his status both turn on the answer to that question. *See* 8 U.S.C. §§ 1182(a)(6)(A)(i), 1255(a).

### A.

The INA generally defines the words "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A); *accord Sanchez v. Mayorkas*, 2021 WL 2301964, at *2 (U.S. June 7, 2021). We have explained that this "definition refers expressly to *entry into* the United States, denoting by its plain terms passage into the country from abroad at a port of entry." *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1051 (9th Cir. 2014); *see also Torres v. Barr*, 976 F.3d 918, 924 (9th Cir. 2020) (en banc) ("[A]lthough the INA does not currently define the term 'entry,' we have long understood this term to refer to 'coming from outside' into the United States." (citation omitted)). Put otherwise, unless an immigration official has inspected a noncitizen at a port of entry and then granted that noncitizen permission to enter the United States, that noncitizen has not been "admitted" under § 1101(a)(13)(A). *See United States v. Hernandez-Arias*, 757 F.3d 874, 880 (9th Cir. 2014).

Accordingly, immigration officials have not "admitted" Posos to the United States under § 1101(a)(13)(A). Though these officials have detained and inspected Posos multiple times at a U.S. port of entry, he concedes that they have never granted him permission to enter the United States.

The border patrol's September 1990 apprehension, interrogation, and release of Posos at a checkpoint in San Clemente, California does not change this calculus. We assume that these actions could theoretically amount to an "inspection and authorization" under § 1101(a)(13)(A). Even so, that inspection and authorization did not take place at a "port of entry"; the San Clemente checkpoint sits well within the United States. Posos thus cannot have lawfully entered "the United States *after* [this] inspection and authorization." 8 U.S.C. § 1101(a)(13)(A) (emphasis added).

Still, § 1101(a)(13)(A)'s definition is just a default, and, when statutory context has demanded, we have read the term "admitted" more broadly than the "strict definition" in § 1101(a)(13)(A). *Hernandez-Arias*, 757 F.3d at 880 (quoting *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1015 (9th Cir. 2006)). But the Supreme Court recently emphasized that "[s]ection 1255 generally requires a lawful admission" of the kind described in § 1101(a)(13)(A) "before a person can obtain" lawful permanent-resident status. *Sanchez*, 2021 WL 2301964 at *5; *see also id.* at *2. And we have found no factual or legal ground that would justify reading the word "admitted" in either § 1182(a)(6)(A)(i) or § 1255(a) to encompass Posos's interaction with officials at the San Clemente checkpoint. The IJ therefore correctly concluded that Posos had not been "admitted" to the United States as required under § 1182(a)(6)(A)(i) or § 1255(a).

## B.

The BIA reached the same result, but its route there turned on an erroneous interpretation of our decision in *Hernandez-Arias*. We take this opportunity to correct the BIA's reasoning.

*Hernandez-Arias* assumed that a noncitizen with temporary resident status under IRCA's amnesty provisions (8 U.S.C. § 1255a(a)) had received a fictional admission to the United States.  757 F.3d at 881.  But even so, the government's decision to terminate that status under 8 C.F.R. § 245a.2(u)(4) fully unwound that "statutory fiction."  *Id.*  By contrast, we never suggested that terminating a noncitizen's temporary resident status would negate a noncitizen's "*factual* admission that occurs during a period of time that the alien is legally entitled to exit and reenter the United States."  *Gomez v. Lynch*, 831 F.3d 652, 662 (5th Cir. 2016).  We instead cut off that argument, stating that "our review . . . [was] confined to the operation of IRCA and its unique implementing regulations" and "limit[ing] the effect of our holding and our discussion . . . to those admissions arising under . . . 8 U.S.C. § 1255a(a)."  *Hernandez-Arias*, 757 F.3d at 881 n.3.

The BIA thus stretched *Hernandez-Arias* beyond that decision's limits when it concluded that the INS's revocation of Posos's temporary resident status in 1993 undid any theoretical "factual admission" at the San Clemente checkpoint in 1990.  Noncitizens factually admitted to the United States at a U.S. port of entry while they hold temporary resident status under § 1255a(a) do not magically become unadmitted once their temporary resident status ends. *See id*.  They have, after all, still been "inspected" and "authorized" to enter the United States at a port of entry. 8 U.S.C. § 1101(a)(13)(A).

\*\*\*

Because the IJ's legal analysis was sound, we affirm the agency's conclusion that Posos was removable under § 1182(a)(6)(A)(i) and ineligible to adjust his status under § 1255(a) and deny his petition on this point.

**IV.**

That leaves the question of whether the agency correctly denied Posos's application for voluntary departure because he had not been physically present in the United States for at least one year before DHS served him with the NTA in this case. *See* 8 U.S.C. § 1229c(b)(1)(A). Unlike the agency, we have the benefit of the Supreme Court's decisions in *Pereira* and *Niz-Chavez*, and, given those rulings, we grant Posos's petition on this front and return the case to the agency to re-examine his application for voluntary departure.

A.

After ordering a noncitizen removed from the United States, an IJ may permit that noncitizen to leave the country voluntarily and at his own expense, rather than being deported by the government. *See* 8 U.S.C. § 1229c(b). The IJ must, however, make certain findings before authorizing that discretionary relief. *See id.* § 1229c(b)(1). Among other things and at issue here, the IJ must find that the noncitizen "has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 1229(a)." *Id.* § 1229c(b)(1)(A).

Whether a noncitizen meets this physical-presence requirement appears, at first glance, a simple enough question. Once DHS serves a noncitizen with an NTA "under section 1229(a)," that noncitizen ordinarily stops accruing physical-presence time. *Id*. An IJ need then only determine the date of service, the date the noncitizen last entered the United States, and how much time passed between the two. If more than a year has elapsed, the noncitizen may merit voluntary departure.

But in immigration law, provisions that seem simple require delicate parsing. And here, the phrase "the date the notice to appear was served under section 1229(a)" plays a critical role in calculating a noncitizen's physical-presence time. *Id.* § 1229c(b)(1)(A). It does so in two ways.

First, this phrase unambiguously requires that the NTA, if it is to stop a noncitizen from earning physical-presence time, must comply with § 1229(a)'s requirements. To start, the statute expressly references "section 1229(a)," telling a reader "where to look to find out what 'notice to appear' means." *Pereira*, 138 S. Ct. at 2114. It also demands immigration officials serve the NTA "*under* section 1229(a)." And while the word "under" can have many meanings, we think *Pereira* compels the conclusion here that it signifies "'in accordance with' or 'according to.'" *Id.* (citations omitted). After all, serving a § 1229(a) NTA plays the same role in both § 1229b(d)(1)'s stop-time rule (at issue in *Pereira*) and § 1229c(b)(1)(A)'s physical-presence requirement (at issue here). It marks the end of the temporal period that determines, in part, a noncitizen's eligibility for voluntary departure or cancellation of removal.

Moreover, because the Supreme Court has already told us what Congress meant by "under section 1229(a)" when Congress used this phrase in § 1229b(d)(1)(A), this reading should come as no surprise. For § 1229c(b)(1)(A) uses the exact same language, and interpreting that phrase differently would contravene the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Pereira*, 138 S. Ct. at 2115 (citation omitted); *see generally Corro-Barragan*, 718 F.3d at 1178 (explaining that both provisions came into being when Congress overhauled immigration law through the Illegal Immigration Reform and Immigrant

Responsibility Act of 1996 (IIRIRA)). For these reasons, § 1229c(b)(1)(A) requires DHS to provide a noncitizen with an NTA containing all the information that Congress listed in § 1229(a). *See Niz-Chavez*, 141 S. Ct. at 1480; *Pereira*, 138 S. Ct. at 2114.

Section 1229c(b)(1)(A)'s second subtlety is that it unambiguously envisions a § 1229(a) NTA as being a single document. The statute speaks of "*the* notice to appear." 8 U.S.C. § 1229c(b)(1)(A) (emphasis added). It thus joins the article "the" with the singular noun "notice to appear"— "a combination that . . . seems to suggest a discrete document." *Niz-Chavez*, 141 S. Ct. at 1483. Note also that Congress ended § 1229c(b)(1)(A)'s physical-presence period on "*the* date" the government serves a noncitizen with a § 1229(a) NTA. 8 U.S.C. § 1229c(b)(1)(A) (emphasis added). That language "equate[s] servi[ng]" a § 1229(a) NTA "with a discrete moment, not an ongoing endeavor." *Niz-Chavez*, 141 S. Ct. at 1483. Add to this *Niz-Chavez*'s extended and pertinent discussion of IIRIRA's statutory structure and history, *see id.* at 1482–84, and we have no doubt that § 1229c(b)(1)(A)'s physical-presence period ends only once a noncitizen receives a single document containing the information required by § 1229(a).

Bringing these two principles together: a noncitizen builds up physical-presence time under § 1229c(b)(1)(A) from the moment he enters the United States until the moment he receives a single document that provides him with all the information Congress listed in 8 U.S.C. § 1229(a)—*i.e.*, a § 1229(a) NTA. This conclusion flows from IIRIRA's unambiguous text, structure, and history. We thus have no need to defer to any previous interpretation advanced by the BIA. *See Niz-Chavez*, 141 S. Ct. at 1480; *Pereira*, 138 S. Ct. at 2113–14.

## B.

These principles make resolving Posos's case straightforward. He received an NTA that omitted "[t]he time . . . at which" his removal "proceedings [would] be held," as 8 U.S.C. § 1229(a)(1)(G)(i) requires. He then received various notices of hearing, which provided that missing information, but otherwise lacked the information listed in § 1229(a)(1). He thus never received "the notice to appear . . . served under section 1229(a)" that § 1229c(b)(1)(A) demands.

As a result, Posos has continued to accrue physical-presence time ever since he entered the country in March 2011. This means he had over five years of physical-presence time when the IJ ordered him removed, and he indisputably satisfied § 1229c(b)(1)(A)'s physical-presence requirement. The agency therefore wrongly (though at the time, understandably) found Posos ineligible for voluntary departure. Because both the IJ and the BIA denied Posos's application for voluntary departure solely on the basis of inadequate physical presence, we leave it to the IJ to consider whether Posos satisfies § 1229c(b)'s other requirements.

## V.

For these reasons, we grant in part and deny in part Posos's petition for review and remand to the agency to make further findings and conclusions about his eligibility for voluntary departure.

**PETITION GRANTED IN PART AND DENIED IN PART; REMANDED.[4]**

---

[4] In accordance with Federal Rule of Appellate Procedure 39(a)(4), we award costs to Posos.