**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TANIA LIZETH GONZALEZ-LARA, | No. 23-459 |
| *Petitioners*, | Agency No. A216-443-270 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 17, 2024[*]
San Francisco, California

Filed June 17, 2024

Before: Sidney R. Thomas, Consuelo M. Callahan, and
Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Sidney R. Thomas

---

[*] The panel granted Petitioner's unopposed motion to submit this case on the briefs.

**SUMMARY**[**]

**Immigration**

Denying Tania Lizeth Gonzalez-Lara's petition for review of a decision of the Board of Immigration Appeals, the panel concluded that: 1) the BIA erred in denying her motion to remand, but the error was harmless; and 2) substantial evidence supported the denial of asylum and related relief.

During the pendency of her appeal to the BIA, Gonzalez-Lara filed a motion to remand to apply for voluntary departure following the change in law presented by *Posos-Sanchez v. Garland*, 3 F.4th 1176 (9th Cir. 2021). When she was before the immigration judge, Gonzalez-Lara was not eligible for that relief because she had not accrued one year of continuous physical presence in the United States before service of her notice to appear ("NTA"). However, under *Posos-Sanchez*, her NTA did not terminate her physical presence because it did not list the time and date of her hearing, and therefore, she had sufficient physical presence for voluntary departure.

The panel concluded that the BIA erred in holding that Gonzalez-Lara was barred from seeking relief for which she became newly eligible while on appeal based on a change in law. The panel observed that nothing in *Posos-Sanchez* requires such a rule; the court has required reopening based on eligibility arising from a change in law where the petitioner had not previously applied for such relief; and a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

petitioner is not required to apply for relief when doing so would be futile.

However, the panel concluded that the BIA's error was harmless because Gonzalez-Lara did not allege facts to satisfy all elements of voluntary departure, and the record did not independently establish her prima facie eligibility.

As to asylum and withholding of removal, the panel concluded that substantial evidence supported the BIA's finding that Gonzalez-Lara's fear of harm from gangs in El Salvador was too speculative to support those claims. The panel also concluded that the BIA did not err by finding that she waived any challenge to the denial of protection under the Convention Against Torture.

**COUNSEL**

Katarina Rost, Law Office of Katarina Rost, San Francisco, California; Christopher J. Todd, Law Office of Christopher Todd, Mill Valley, California; for Petitioner.

Jessica E. Burns and Leslie McKay, Senior Litigation Counsel Office of Immigration Litigation; Brian Boynton, Principal Deputy Assistant Attorney General Civil Division; United States Department of Justice, Washington, D.C.; for Respondent.

# OPINION

THOMAS, Circuit Judge:

Petitioner, Tania Lizeth Gonzalez-Lara, petitions for review of the Board of Immigration Appeals' ("BIA") decision denying her motion to remand to apply for voluntary departure and dismissing her appeal of an Immigration Judge's ("IJ") denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Our jurisdiction is governed by 8 U.S.C. § 1252. "Where, as here, the BIA reviewed the IJ's factual findings for clear error, and reviewed de novo all other issues, our review is 'limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted.'" *Singh v. Whitaker*, 914 F.3d 654, 658 (9th Cir. 2019) (quoting *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006)). The agency's factual findings are reviewed for substantial evidence and "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). We review legal and constitutional questions de novo. *Roy v. Barr*, 960 F.3d 1175, 1181 (9th Cir. 2020). We review the BIA's denial of a motion to remand using the abuse-of-discretion standard. *Alcarez-Rodriguez v. Garland*, 89 F.4th 754, 759 (9th Cir. 2023) (citing *Malhi v. INS*, 336 F.3d 989, 993 (9th Cir. 2003)). We deny the petition for review.

I

A

Gonzalez-Lara was born in San Juan Tepezontes, La Paz, El Salvador in 1997. The town was controlled by two rival gangs—the 18th Street ("18th") and Mara Salvatrucha ("MS") gangs. On one occasion, Gonzalez-Lara was at her aunt's store when gang members entered and threatened everyone in the store with guns, took some money, and left.

Gonzalez-Lara met a police officer in July 2017, and they began dating. They remained together until December 2017. The police officer said that he was in danger from the gangs because he was a police officer. Because of this, the officer told Gonzalez-Lara that they should date in secret. The officer said that many of his colleagues had been killed by the gangs, and that family members of police officers, especially their wives and children, were killed by gangs.

The officer was also concerned about dating Gonzalez-Lara openly because her cousin, Luis, had been arrested under suspicion of being a leader of the MS gang. The officer also feared that both gangs would kill Gonzalez-Lara if they knew she was dating a police officer because they would assume that she was helping the police against the gangs. Gonzalez-Lara visited Luis's house, and rumors began to spread that she was collecting information about the gang to give to the police.

In August 2017, Luis was killed while in jail. Gonzalez-Lara's family believes that he was killed by the rival gang, the 18th. Gonzalez-Lara feared that the 18th would target her since everyone in town knew that she was close with Luis. Another one of Gonzalez-Lara's cousins, Alfredo, who

was a member of the 18th, was killed prior to Luis's death. Gonzalez-Lara suspects that the MS gang killed him.

Although Gonzalez-Lara and the police officer hid their relationship, gossip began to spread. After they had been dating for a month, she found a piece of paper on the door of her house that said, "be careful." Gonzalez-Lara did not know who the note came from, but she thought it was a warning from the gangs about her relationship with the officer. Women in Gonzalez-Lara's neighborhood would ask Gonzalez-Lara if she was "dating a cop," and Gonzalez-Lara would deny it.

Gonzalez-Lara learned in September 2017 that she was pregnant with the officer's child. The officer said that the pregnancy would bring problems. One of Gonzalez-Lara's cousins warned her to be careful because gangs were killing wives of policemen. Gonzalez-Lara was worried that the gangs would figure out that the officer was the father of her baby.

Gonzalez-Lara fled El Salvador and entered the United States on December 13, 2017. Her son was born in the United States on June 2, 2018.

B

On July 24, 2018, the Department of Homeland Security initiated removal proceedings against Gonzalez-Lara by filing a Notice to Appear ("NTA"). The NTA did not state the date or time of Gonzalez-Lara's removal proceedings, noting the date and time were "to be set." Gonzalez-Lara later received notice providing that missing information. Gonzalez-Lara sought asylum, withholding of removal, and CAT protection. She claimed persecution on account of her membership in the particular social groups ("PSGs") of (1)

family members of Salvadoran police officers, (2) family members of Luis Alberto Trujillo Gonzalez (her cousin), (3) Salvadoran women, and (4) Salvadoran single women.

The IJ found Gonzalez-Lara credible and accorded her testimony full evidentiary weight, but denied her applications for asylum, withholding of removal, and protection under CAT. The IJ found that Gonzalez-Lara had not suffered harm that rose to the level of past persecution. The IJ noted that Gonzalez-Lara had not been harmed or mistreated in El Salvador, and that the only threat that she received was a note telling her to "be careful." The IJ also found that her fear of future persecution was not objectively reasonable, because police officers were not the only individuals experiencing gang violence in El Salvador, and widespread random violence is not sufficient to establish a well-founded fear of persecution. Thus, the IJ held that Gonzalez-Lara did not meet the requirements of asylum.

In the alternative, the IJ considered Gonzalez-Lara's PSGs. The IJ found that Gonzalez-Lara could not establish nexus because she was not harmed because of her affiliation with a police officer, and there was no evidence that the gangs were looking for her. The IJ considered Gonzalez-Lara's PSG of Salvadoran women and concluded that there was no nexus because she failed to corroborate that she would be targeted as a woman. The IJ declined to analyze Gonzalez-Lara's PSG of Salvadoran single women because she found that this PSG was not cognizable. As to Gonzalez-Lara's anti-gang political opinion, the IJ found that there was no evidence that she opposed gangs or that she would be targeted because of her affiliation with the police.

The IJ noted that while there is widespread violence in El Salvador, there was evidence that the government is

making active efforts to combat the violence by investigating actions taken by the gangs. The IJ also found that Gonzalez-Lara did not establish that internal relocation would be impossible, because although she stated that the gangs were everywhere and would be able to find her, she did not provide corroborating evidence. Thus, the IJ concluded that Gonzalez-Lara failed to meet the requirements for asylum and for withholding of removal.

Finally, the IJ concluded that Gonzalez-Lara was not eligible for CAT protection because she did not meet her burden to show that it was more likely than not that she would be tortured.

Gonzalez-Lara appealed to the BIA. During the pendency of the appeal, she filed a motion to terminate removal proceedings and requested a stay of removal. Gonzalez-Lara also filed a motion to remand to apply for voluntary departure following the change in law presented by *Posos-Sanchez v. Garland*, 3 F.4th 1176 (9th Cir. 2021). *Posos-Sanchez* held that "a noncitizen builds up physical-presence time [as required for voluntary departure] under § 1229c(b)(1)(A) from the moment he enters the United States until the moment he receives a single document that provides him with all the information Congress listed in 8 U.S.C. § 1229(a)." *Id.* at 1185. When Gonzalez-Lara was before the IJ prior to *Posos-Sanchez*, she was not eligible for voluntary departure. Under the law pre-*Posos-Sanchez*, Gonzalez-Lara had not accrued enough continuous physical presence in the United States before service of the NTA.

The BIA dismissed Gonzalez-Lara's appeal and denied her motions and request for a stay of removal. The BIA found that Gonzalez-Lara did not challenge the denial of her application based on failure to establish past persecution,

deeming that claim waived. The BIA affirmed the IJ's denial of Gonzalez-Lara's applications for asylum and withholding of removal. The BIA reasoned that Gonzalez-Lara did not show a well-founded fear of future persecution because she did not present evidence that the gangs have shown interest in her, her former partner, or family since she left El Salvador in 2017. The BIA determined that the IJ reasonably concluded that Gonzalez-Lara's fear of harm was too speculative. The BIA agreed with the IJ that Gonzalez-Lara did not meet her burden to establish that she could not relocate because she did not face any specific harm. Finally, the BIA found no clear error in the IJ's determination that Gonzalez-Lara did not show that the Salvadoran government was unable or unwilling to control the gangs. The BIA found that Gonzalez-Lara had waived the IJ's denial of her CAT claim because she did not raise any specific argument on appeal.

The BIA denied Gonzalez-Lara's motion to remand to apply for voluntary departure. The BIA reasoned that *Posos-Sanchez* was not applicable to respondents who never sought voluntary departure in their proceedings before the IJ, and that Gonzalez-Lara made no argument as to her prima facie eligibility with respect to her means and intent to depart the United States, or her requisite good moral character.

Finally, the BIA denied Gonzalez-Lara's motion to terminate her removal proceedings, finding that an NTA that does not specify the time and place of a respondent's removal does not deprive the IJ of jurisdiction. This timely petition for review followed.

II

A

The BIA erred in denying the motion to remand on the basis that Gonzalez-Lara had not previously applied for voluntary departure.

Voluntary departure is a discretionary form of relief. 8 C.F.R. § 1229c(b)(1). "The BIA has traditionally granted a motion to reopen or remand 'for the purpose of affording the [noncitizen] an opportunity to apply for any form of discretionary relief' only if the noncitizen either (1) was not afforded the right to apply for the discretionary relief at her former hearing, or (2) is seeking the discretionary relief 'on the basis of circumstances that have arisen subsequent to the hearing.'" *Alcarez-Rodriguez*, 89 F.4th at 761 (quoting 8 C.F.R. § 1003.2(c)(1) (2023); 8 C.F.R. § 1003.23(b)(3) (2023)).

Before an IJ enters an order granting voluntary departure, the IJ must find that the noncitizen (A) "has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 1229(a);" (B) "is, and has been, a person of good moral character for at least 5 years immediately preceding" the application for voluntary departure; (C) "is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4);" and (D) has established by clear and convincing evidence that he or she "has the means to depart the United States and intends to do so." 8 U.S.C. § 1229c(b)(1).

As we have noted, when Gonzalez-Lara was before the IJ, pre-*Posos-Sanchez*, she was not eligible for voluntary departure because she had not accrued enough continuous

physical presence in the United States before the NTA was served. However, *Posos-Sanchez*—which issued in 2021 while Gonzalez-Lara's appeal was pending before the BIA—altered the legal landscape. In *Posos-Sanchez*, the agency denied the petitioner's application for voluntary departure because he did not meet the one-year physical presence requirement. 3 F.4th at 1182. However, like the NTA Gonzalez-Lara received, the petitioner's NTA did not state the time or date of his removal proceedings. *Id*. at 1180. We considered whether the agency correctly denied Posos-Sanchez's application in light of the Supreme Court's decisions in *Pereira v. Sessions*, 585 U.S. 198 (2018) and *Niz-Chavez v. Garland*, 593 U.S. 155 (2021). *Id*. at 1184. Combining the principles from *Niz-Chavez* and *Pereira*, we held that "a noncitizen builds up physical-presence time under § 1229c(b)(1)(A) from the moment he enters the United States until the moment he receives a single document that provides him with all the information Congress listed in 8 U.S.C. § 1229(a)—i.e., a § 1229(a) NTA." *Id.* at 1185. As recognized in *Posos-Sanchez*, one of the items that must be included in the "single document," *id*., is "[t]he time . . . at which the [removal] proceedings will be held," 8 U.S.C. § 1229(a)(1)(G)(i). *See* 3 F.4th at 1185. And *Posos-Sanchez* clarified, for the first time, that an NTA that omits the time and date of the noncitizen's removal hearing does not mark the end of the period of continuous physical presence required for granting voluntary departure. *See id*. at 1184–85.

Thus, *Posos-Sanchez* provided Gonzalez-Lara a new, previously unrecognized ground for establishing her eligibility to seek voluntary departure. Gonzalez-Lara entered the United States on December 13, 2017, and was served with the NTA the next day, on December 14, 2017.

Because Gonzalez-Lara had not accumulated a year of continuous presence before receiving the NTA as required by § 1229c(b)(1)(A), she was not eligible for voluntary departure when she was before the IJ. However, because Gonzalez-Lara's NTA did not contain the time and date of her hearing, as first revealed by *Posos-Sanchez*, her NTA did not actually "mark[] the end of the temporal period that determines, in part, a noncitizen's eligibility for voluntary departure." 3 F.4th at 1185. Thus, by the time she filed her remand motion with the BIA, Gonzalez-Lara had accumulated nearly four years of physical presence in the United States, which was more than sufficient time to qualify for voluntary departure.

The BIA held that because Gonzalez-Lara had not applied for voluntary departure before the IJ, she was prevented from benefitting from this Court's holding in *Posos-Sanchez*, which newly recognized the impact of an incomplete NTA on establishing eligibility for voluntary departure. This was error. Although it is true (as the BIA observed) that the petitioner in *Posos-Sanchez* did apply for voluntary departure before the IJ, 3 F.4th at 1180, nothing in that decision requires that a noncitizen must have applied for voluntary departure before the IJ to benefit from a subsequent change in law while on appeal. Rather, *Posos-Sanchez* focuses on the fact that the petitioner satisfied the physical-presence requirement and was therefore eligible for voluntary departure. *See id*. at 1185–86. Thus, the BIA erred by adding an additional requirement for voluntary departure that is not required by 8 U.S.C. § 1229c(b) or *Posos-Sanchez*.

A motion to remand is akin to a motion to reopen. *See Rodriguez v. INS*, 841 F.2d 865, 867 (9th Cir. 1987) (noting that where an appeal is pending and the BIA has yet to issue

a decision, a motion to reopen before the BIA should be treated as a motion to remand). We have held that motions to reopen can be used for the purpose of submitting new applications for relief. *See Silva v. Garland*, 993 F.3d 705, 717 (9th Cir. 2021) ("Although [the respondent] did not seek relief from removal at his initial hearing, [a noncitizen] may move to reopen proceedings for the purpose of submitting *new* applications for relief." (emphasis added)). Thus, while an appeal is pending before the BIA, a motion to remand is the proper course of action for a petitioner to submit a new application for relief, especially when that application is based on a substantial change in the law.

Indeed, we have required reopening based on eligibility arising from a change in law where the petitioner had not previously applied for such relief. For example, in *Quebrado Cantor v. Garland*, 17 F. 4th 869, 871-75 (9th Cir. 2021), we granted petitioner Quebrado Cantor's petition for review challenging the denial of a motion to reopen and remanded to the BIA where he had not previously applied for cancellation of removal, but because of the change in law presented in *Pereira*, he had accrued the requisite physical presence for relief.

We have also recognized that a petitioner does not need to exhaust a claim by applying for a form of relief where the application would be futile. *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position 'appears already set' and recourse to administrative remedies is 'very likely' futile, exhaustion is not required." (citation omitted)); *Alcaraz v. INS*, 384 F.3d 1150, 1158 (9th Cir. 2004) ("We do not require an alien to exhaust administrative remedies on legal issues based on events that occur after briefing to the BIA has been completed."). In non-precedential decisions, we have

applied these principles to cases where a noncitizen sought voluntary departure following *Posos-Sanchez* on appeal to this Court. *See, e.g., de Pedro v. Garland*, No. 22-656, 2024 WL 81577 (9th Cir. Jan. 8, 2024) (remanding to BIA to determine the petitioner's eligibility in light of intervening decision in *Posos-Sanchez*, even though the petitioner had not applied for voluntary departure before either the IJ or the BIA, because exhaustion is not required where resort to the agency would be futile); *Vazquez Renoj v. Garland*, No. 20-71910, 2022 WL 193205 (9th Cir. Jan. 21, 2022) (remanding to allow noncitizen to apply for voluntary departure following *Posos-Sanchez* even when the claim was unexhausted because the BIA would not have had the benefit of *Posos-Sanchez* even if he had raised the claim below). And, in the present case, administrative exhaustion is not an issue, because Gonzalez-Lara put the BIA on notice of her voluntary departure claim. Because Gonzalez-Lara properly sought relief based on a change in law, the BIA erred by denying Gonzalez-Lara relief on this ground.

Simply put, the law does not require parties to engage in futile acts. The BIA erred in holding that Gonzalez-Lara was barred from seeking relief for which she became newly eligible while on appeal based on an intervening change in law.

B

However, our analysis does not end there, because in order to obtain remand Gonzalez-Lara was also required to establish prima facie eligibility for voluntary departure by meeting all of its criteria, not just the physical presence requirement. The BIA may deny a motion to reopen for failure to establish prima facie eligibility for the relief

sought. *See Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1228 (9th Cir. 2016).

Here, the BIA did not abuse its discretion in finding that Gonzalez-Lara did not allege facts to satisfy all elements of voluntary departure eligibility—namely, her means and intent to depart the United States and her good moral character. Given that the record does not independently establish her prima facie eligibility for voluntary removal, the BIA's error in requiring her to have applied for voluntary departure before the IJ is harmless. Thus, we decline to remand this case for Gonzalez-Lara to seek voluntary departure.

## III

The BIA properly denied Gonzalez-Lara's petition for asylum and withholding of removal. Gonzalez-Lara does not contest the agency's finding that she did not suffer past persecution. In the absence of past persecution, an applicant may be eligible for asylum based on a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(2). An applicant "must establish a well-founded fear of persecution by showing both a subjective fear of future persecution, as well as an objectively 'reasonable possibility' of persecution upon return to the country in question." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1029 (9th Cir. 2019).

Substantial evidence supports the BIA's finding that Gonzalez-Lara's fear of harm was too speculative to support her claim for relief. Gonzalez-Lara did not present evidence that the gangs have shown interest in her, her former partner, or her family since she left El Salvador in 2017. *See Sharma v. Garland*, 9 F.4th 1052, 1066 (9th Cir. 2021) ("The ongoing safety of family members in the petitioner's native country undermines a reasonable fear of future

persecution."). Although Gonzalez-Lara was aware of rumors about her relationship and her cousins' affiliations with different gangs when she lived in El Salvador, she was never harmed. The BIA acknowledged the country conditions evidence relating to gang violence, but again noted that Gonzalez-Lara did not specify why she would be targeted upon her return despite previous years wherein she lived safely in El Salvador. Thus, the BIA's conclusion that Gonzalez-Lara's fear is not objectively reasonable is supported by substantial evidence.

## IV

The BIA did not err by finding that Gonzalez-Lara waived any challenge to the denial of her CAT claim by failing to meaningfully argue that issue in her brief to the BIA. Gonzalez-Lara's brief to the BIA only requested reversal of the denial of CAT relief in the conclusion section, without identifying what issues would warrant such reversal. Because a general challenge to the IJ's decision does not satisfy 8 U.S.C. § 1252(d)(1)'s exhaustion requirement, Gonzalez-Lara's CAT claim is unexhausted and we therefore do not reach her arguments for CAT relief. *See Alanniz v. Barr*, 924 F.3d 1061, 1068–69 & 1069 n.8 (9th Cir. 2019).

**PETITION DENIED.**