NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 28 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SEIRAN ALEKSANIAN; TATIANA UDOVITSA; M.A.,<br><br>    Petitioners,<br><br>  v.<br><br>TODD BLANCHE, Acting Attorney General,<br><br>    Respondent. | No. 24-5444<br><br>Agency Nos.<br>A241-704-878<br>A241-704-879<br>A241-704-880<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 24, 2026[**]
Seattle, Washington

Before: W. FLETCHER and KOH, Circuit Judges, and RAYES, District Judge.[***]

Lead Petitioner Seiran Aleksanian, Rider Petitioner Tatiana Udovitsa, and

Rider Petitioner M.A. (collectively, "Petitioners"), citizens of Russia, petition for

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

review of the decision by the Board of Immigration Appeals ("BIA") dismissing an appeal from an order of an Immigration Judge ("IJ") denying Lead Petitioner's claims for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") and Rider Petitioners' derivative claims for asylum.[1] We have jurisdiction pursuant to 8 U.S.C. § 1252. We deny the petition.

"Where the BIA issues its own decision but relies in part on the immigration judge's reasoning, we review both decisions." *Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 702 (9th Cir. 2022) (internal quotation marks and citation omitted). "We review for substantial evidence factual findings underlying the BIA's determination that a petitioner is not eligible for asylum, withholding of removal, or CAT relief. To prevail . . . the petitioner must show that the evidence . . . compels the conclusion that these findings and decisions are erroneous." *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022) (internal quotation marks and citations omitted).

1.      To be eligible for asylum, Petitioners must show that they "qualify as a refugee either because [Petitioner] has suffered past persecution or because

---

[1] Under the Immigration and Nationality Act ("INA"), spouses and children as defined in 8 U.S.C.A. § 1101(b)(1)(A-E) may assert derivative asylum claims. *See* 8 U.S.C. § 1158(b)(3). The INA does not provide for derivative withholding claims, nor do the CAT implementing regulations provide for derivative CAT claims. *See* 8 U.S.C. § 1231(b)(3) (not providing derivative relief for withholding claims); 8 C.F.R. § 1208.16(c) (not providing derivative relief under CAT); *See also Oscar v. Bondi*, 135 F.4th 777, 779 n.1 (9th Cir. 2025).

[Petitioner] has a well-founded fear of future persecution" on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 1208.13(b). Petitioners' opening brief and reply brief do not challenge the agency's determination that none of the past individual instances of harm and discrimination Lead Petitioner suffered in Russia rise to the level of persecution. Instead, Petitioners' opening brief argues that the agency erred by not considering whether the past harm and discrimination Lead Petitioner suffered *cumulatively* rises to the level of persecution. Notably, Petitioners' reply brief abandons this argument. Petitioners are correct that the agency must review whether all instances of past harm and discrimination cumulatively rise to the level of persecution. *Salguero Sosa v. Garland*, 55 F.4th 1213, 1219 (9th Cir. 2022) ("[W]e hold that the BIA must conduct a cumulative-effect review when assessing a petitioner's claim of past persecution[.]"). However, the IJ explicitly "consider[ed] this harm cumulatively" and concluded that Lead Petitioner did not "suffer[] harm rising to the level of persecution in Russia." The BIA likewise explicitly "agree[d] with [the IJ's] determination that, even in the aggregate, [the harm Lead Petitioner suffered] does not amount to persecution under the INA." Therefore, the agency did not "err[] by failing to conduct a cumulative-effect review" and "remand to the agency to apply the correct legal framework to [Lead] Petitioner's asylum claim" is not required. *Salguero Sosa*, 55 F.4th at 1220.

3

Substantial evidence also supports the agency's determination that Lead Petitioner did not have an objectively well-founded fear of future persecution on account of Lead Petitioner's political opinions opposing Russia's war in Ukraine. *Gonzalez-Lara v. Garland*, 104 F.4th 1109, 1116 (9th Cir. 2024) (reviewing agency's determination that petitioner did not have an objectively well-founded fear of future persecution for substantial evidence). A fear of future persecution is objectively well-founded if "petitioner faces an individualized risk of persecution or [] there is a pattern or practice of persecution against similarly situated individuals." *Gutierrez-Alm v. Garland*, 62 F.4th 1186, 1198 (9th Cir. 2023) (internal quotation marks and citations omitted). Petitioners themselves only argue that the "evidence *supports* the contention that the Russian government" would target Lead Petitioner, not that the record *compels* that finding. Petitioners do not point to any evidence or example in the record of the Russian government targeting someone like Lead Petitioner, who only shares his anti-war views with family, friends, and other local acquaintances. Unlike the examples in the record, Lead Petitioner is not an opposition politician, anti-war activist, protest organizer, or human rights lawyer. Lead Petitioner is not active on social media and did not publicly display anti-war messaging on his store front either. In fact, the police did not arrest or detain Lead Petitioner even after he expressed his anti-war views to Russian police officers investigating an incident of vandalism at Lead Petitioner's

4

store by pro-war vigilantes. Thus, the record does not compel the conclusion that Lead Petitioner has an objectively well-founded fear of future persecution. *See Plancarte Sauceda*, 23 F.4th at 831 (on substantial evidence review we reverse the agency only if the record compels a conclusion contrary to the one the agency reached).

Accordingly, there is no error in the agency's determination that Lead Petitioner is ineligible for asylum and the agency's denial of Lead Petitioner's asylum application and Rider Petitioners' derivative asylum applications. *See* 8 C.F.R. § 1208.13(b) (requiring past persecution or a well-founded fear of future persecution to be eligible for asylum).

Petitioners argue that, nevertheless, the agency erred by not analyzing Lead Petitioner's claimed particular social groups, "Ethnic Armenians living in Russia" and "Russian citizens opposed to the war in Ukraine." We disagree. Lead Petitioner's failure to establish that he suffered past persecution or has a well-founded fear of future persecution was dispositive of Lead Petitioner's asylum claim, so there was no reason for the agency to also analyze Lead Petitioner's particular social groups. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Simeonov v. Ashcroft*, 371 F.3d 532, 538 (9th Cir. 2004) (BIA did not need to

5

reach the merits of petitioner's claim where a "threshold determination of law" rendered petitioner "not statutorily eligible" for the requested relief).

Finally, Petitioners argue that the agency erred by not separately addressing Rider Petitioners' derivative asylum applications. According to Petitioners, the agency was required to do so because M.A.'s derivative asylum application "raised at least one unique basis for granting relief." *De Rivas v. Sessions*, 899 F.3d 537, 543 (8th Cir. 2018). However, the alleged "unique basis"—M.A. being brainwashed in Russian schools—was also raised by Lead Petitioner's asylum application and the IJ considered it when analyzing Lead Petitioner's application. The agency thus accurately concluded that Petitioners' asylum applications are all based on the exact same set of facts and appropriately denied Rider Petitioners' derivative asylum applications "for the same reasons [] provided above with respect to" Lead Petitioner's application. Petitioners cite no authority for the proposition that the agency had to repeat the same analysis for Rider Petitioners' derivative asylum applications just to reach the same conclusion.

2.     As Lead Petitioner failed to establish an objectively reasonable fear of future persecution under "the lower standard for asylum," Lead Petitioner "necessarily fails to satisfy the more demanding standard for withholding of removal." *Davila v. Barr*, 968 F.3d 1136, 1142 (9th Cir. 2020).

3.     Substantial evidence supports the agency's determination that Lead

6

Petitioner is ineligible for CAT protection because it is not "more likely than not that [Lead Petitioner] will face a *particularized* and *non-speculative* risk of torture." *Park v. Garland*, 72 F.4th 965, 980 (9th Cir. 2023) (reviewing factual findings underlying denial of CAT protection for substantial evidence) (emphasis in original). Again, Petitioners point to no evidence that the Russian government would target Lead Petitioner for arrest and detention for his anti-war views if returned to Russia, so it is not more likely than not that Lead Petitioner faces "a particularized and non-speculative risk of torture." *Id.*

**PETITION DENIED.**[2]

---

[2] The temporary stay of removal remains in place until the mandate issues. *See* Dkt. 3, 4.