**NOT FOR PUBLICATION**

**FILED**

JUN 24 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| ELDAR GAFUROV; LEILA GAFUROVA; S.G.; I.G., | No. 24-6466 |
| Petitioners, | Agency Nos. A246-713-805 A246-713-804 A246-713-803 A246-713-806 |
| v. | |
| TODD BLANCHE, Acting Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 11, 2026
Portland, Oregon

Before: COLLINS and LEE, Circuit Judges, and FITZWATER, District Judge.[**]

Eldar Gafurov,[1] a Meskhetian Turk and citizen of Russia, seeks review of the

Board of Immigration Appeals' (BIA) dismissal of his appeal of an Immigration

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

[1] As the BIA noted, only Eldar Gafurov filed an application for relief, but his wife and children are derivative beneficiaries of his asylum application. *See Oscar v. Bondi*, 135 F.4th 777, 779 n.1 (9th Cir. 2025).

Judge's (IJ) denial of his claims for asylum, withholding of removal, and Convention Against Torture (CAT) protection. He also challenges the BIA's denial of his due process claim. We review "legal and constitutional questions de novo," *Gonzalez-Lara v. Garland*, 104 F.4th 1109, 1111 (9th Cir. 2024), and "both [the agency's] underlying factual findings and [its] application of the INA to those findings" for substantial evidence, *Urias-Orellana v. Bondi*, 607 U.S. 537, 545 (2026); *see Davila v. Barr*, 968 F.3d 1136, 1141 (9th Cir. 2020). We have jurisdiction under 8 U.S.C. § 1252. We grant in part and deny in part the petition and remand to the BIA.

1. <u>Withholding and CAT</u>. Gafurov waived his challenges to the agency's denial of withholding and CAT relief by failing to "specifically and distinctly argue[]" them in his opening brief. *Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1080 (9th Cir. 2013) (citation omitted). It is not enough, as Gafurov argues, that his withholding claim is "derivative" of the asylum claim. *See Rizk v. Holder*, 629 F.3d 1083, 1091 n.3 (9th Cir. 2011), *overruled on other grounds by Alam v. Garland*, 11 F.4th 1133 (9th Cir. 2021) (en banc).

2. <u>Due process</u>. Gafurov also failed to exhaust two of his three due process claims—namely, that the interpreter caused miscommunications and that the IJ improperly limited Gafurov's testimony and dismissed key incidents without full consideration. *Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023) ("Exhaustion requires a . . . claim to the court on appeal to have first been raised in

2

the administrative proceedings below." (citation omitted)); *see also Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005) ("[D]ue process claims alleging only procedural errors within the BIA's power to redress are [not] exempt from [the] administrative exhaustion requirement." (cleaned up)). A review of the record confirms that the only due process claim pressed to the BIA was the IJ's lack of access to the record during the hearing (which we will address next).

In asserting that the IJ's lack of access to the record during the merits hearing resulted in a due process violation, Gafurov claims prejudice only with respect to the IJ's timeline of the dates of his return to Russia in November 2022 and the Russian government's efforts to conscript him. *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (explaining that petitioner must show prejudice—that the outcome may have been affected—to succeed on a due process claim). Given that, as explained below, we remand to the agency for further consideration with respect to Gafurov's claim of a well-founded fear of future persecution based on discriminatory conscription, this theory of prejudice, in its current posture, is moot. We therefore have no occasion to address this third due process claim.

3.    Asylum—past persecution. Substantial evidence supports the agency's conclusion that Gafurov has not suffered past persecution. *See Urias-Orellana*, 607 U.S. at 551 (holding that "the persecution determination" is reviewed for substantial evidence). While Gafurov provided testimony and written declarations describing

3

several incidents in which he or his family suffered discrimination, these incidents do not rise to the level of severity required to compel a finding of past persecution. *See Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 1998) (explaining that persecution is an "extreme concept" that "does not include every sort of treatment our society regards as offensive." (citation omitted)); *Ghaly v. I.N.S.*, 58 F.3d 1425, 1431 (9th Cir. 1995) (emphasizing that discrimination alone does not ordinarily amount to persecution within the meaning of the INA). The relevant discriminatory acts were carried out sporadically over roughly three decades (often with multi-year gaps between them), committed by various individuals across disparate locations, and never resulted in severe injuries. *See*, *e.g.*, *Halim v. Holder*, 590 F.3d 971, 975–76 (9th Cir. 2009) (concluding that "five instances of mistreatment," including bullying, an unjustified stop and detainment "for a couple of days" by police, being beaten by a mob, and one instance of being denied access to medical treatment did not compel a finding of past persecution).

Gafurov's contention that the BIA incorrectly viewed each act individually rather than cumulatively is belied by the record. The BIA referenced the correct standard and then applied that standard. This is sufficient because we generally accept that there were no legal errors "if the BIA expressly cited and applied the relevant caselaw in rendering its decision." *Park v. Garland*, 72 F.4th 965, 976 (9th Cir. 2023) (citation omitted) (alterations adopted).

4

4.      *Asylum—future persecution*. The BIA, however, failed to address whether Gafurov established a well-founded fear of future persecution based on his claim that Russia disproportionately conscripts ethnic minorities (such as Meskhetian Turks like himself) for its war against Ukraine.[2]

We have stated that "target[ing] [a person] for conscription," or imposing corresponding "punishment" for evading conscription, "on account of . . . [a] protected ground," may constitute persecution under the INA. *Movsisian v. Ashcroft*, 395 F.3d 1095, 1097 (9th Cir. 2005). The IJ's decision expressly raised the issue of discriminatory-conscription and therefore put the BIA on notice of it.[3] *Figueroa v. Mukasey*, 543 F.3d 487, 493 (9th Cir. 2008) (concluding that an issue was preserved for the BIA's review where an IJ's decision addressed it) *impliedly overruled on other grounds in Abebe v. Mukasey*, 554 F.3d 1203 (9th Cir. 2009) (en banc). Gafurov then repeatedly pressed his discriminatory-conscription argument in his appeal brief to the BIA, but the BIA failed to address it. We therefore remand for the BIA to analyze whether Russia's alleged targeting of ethnic minorities for

---

[2] Evidence of country conditions shows that the Russian government "disproportionately mobilized members of non-Russian ethnic groups to fight in Russia's war against Ukraine," and Russian politician Dmitry Medvedev has publicly threatened draft evaders who fled the country, calling them "scoundrels" who should not be allowed back in and urging laws be enacted to punish them.

[3] It is not clear from the record whether the petitioner expressly addressed this issue to the IJ, but the IJ sufficiently preserved the issue such that the BIA should have addressed it.

5

conscription establishes a well-founded fear of future persecution. *See Brezilien v. Holder*, 593.3d 403, 412 (9th Cir. 2009) (noting that remand is appropriate where the "BIA never addressed" a significant argument raised by the petitioner).

We, however, reject Gafurov's alternative theory of future persecution based on "a pattern or practice in his . . . country of nationality" of persecution against disfavored groups. 8 C.F.R. § 1208.13(b)(2)(iii)(A). The agency acknowledged that "there is a widespread pattern of discrimination against ethnic minorities and Meskhetian Turks in Russia," but concluded that this discrimination is not sufficiently systematic to constitute persecution. The record does not compel a contrary conclusion. Similar evidence of widespread discrimination has been deemed insufficient to compel the conclusion that there exists a "pattern or practice" of persecution in a given country. *Cf. Wakkary v. Holder*, 558 F.3d 1049, 1061 (9th Cir. 2009) ("Although the record contains evidence of widespread anti-Chinese and anti-Christian *discrimination* that affects a very large number of individuals, and although it is clear that a certain portion of those individuals suffer treatment that rises to the level of persecution, the record does not establish that the situation in Indonesia is similar to the patterns or practices of persecution described in our prior case law." (emphasis in original))

**DENIED IN PART AND GRANTED IN PART; REMANDED.**

6